MANSFIELD, Justice
(concurring in part and dissenting in part).
I join the court’s well-reasoned opinion with the exception of part IV.B, where I respectfully dissent. In part IVA, the court recognizes the legislature’s right to determine appropriate sentences, subject to constitutional constraints. However, in part IV.B, the court disregards the lesson of part IVA and resentences Louisell itself, instead of giving effect to current law. I believe it is wrong not to give the 2015 legislation its intended effect, and wrong not to apply it to Yvette Louisell’s case.[12] As noted by the majority in a footnote, our general assembly recently amended the law relating to sentencing of juveniles convicted of first degree murder. The law now provides:
[A] defendant convicted of murder in the first degree in violation of section 707.2, and who was under the age of eighteen at the time the offense was committed shall receive one of the following sentences:
(1) Commitment to the director of the department of corrections for the rest of the defendant’s life with no possibility of parole unless the governor commutes the sentence to a term of years.
(2) Commitment to the custody of the director of the department of corrections for the rest of the defendant’s life with the possibility of parole after serving a *604 minimum term of confinement as determined by the court.
(3) Commitment to the custody of the director of the department of corrections for the rest of the defendant’s life with the possibility of parole.
2015 Iowa Legis. Serv. no. 76 (S.F. 448) (West 2015) (to be codified at Iowa Code § 902.1).
Thus, the legislature has now established three sentencing options — life without parole, life with parole, and life with parole eligibility after service of a term of years. Id. § 1. This law applies to “a person who was convicted of a class A’ felony prior to, on, or after the effective date of this Act and who was under the age of eighteen at the time the offense was committed.” Id. § 5. Hence, by its terms, the law applies to Louisell.
Generally, of course, criminal defendants are sentenced based on the law that was in effect at the time the crime was committed. However, Iowa Code section 4.13(2) provides that if the punishment for an offense is reduced, then punishment “if not already imposed shall be imposed according to the statute as amended.” Iowa Code § 4.13(2) (2015); see State v. Chrisman, 514 N.W.2d 57, 61, 63 (Iowa 1994) (holding that where legislation reducing the punishment became effective after the crime was committed but before sentencing, the new legislation applied). The legislature’s 2015 amendment amounts to a reduction in the prior mandatory life-without-parole (LWOP) sentence. Thus, with respect to any juvenile homicide defendant who has not yet been sentenced, or whose LWOP sentence has been vacated and has not yet been resentenced, section 4.13(2) would apply — not to mention the fact (already noted) that the 2015 legislation itself says that it applies retroactively. See 2015 Iowa Legis. Serv. no. 76 (S.F. 448) § 5.
Our colleagues in Nebraska recently had to sort through similar issues. In 2013, responding to the United States Supreme Court’s decision in Miller v. Alabama, 567 U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the Nebraska legislature eliminated mandatory LWOP for juveniles who commit first-degree murder and provided a sentencing range of forty years to life. See State v. Castaneda, 287 Neb. 289, 842 N.W.2d 740, 759 (2014). The Nebraska Supreme Court then had to address the case of a defendant who had been sentenced to LWOP before Miller but whose appeal was still pending at the time of the 2013 amendment. Id. at 760. The defendant argued his LWOP sentence should be struck down and he should be given the sentence for second-degree murder as it existed when he committed the offense. Id. at 760-61. The state maintained the defendant should be resentenced under the 2013 legislation. Id. at 760.
The court agreed with the state. Id. at 761-62. The court found no ex post facto violation because the new law was ameliorative — it reduced the sentence for first-degree murder. Id. And the court found that application of the new law was supported by a Nebraska principle of legal interpretation similar to Iowa Code section 4.13(2), which provided that “[wjhere a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise.” Id. at 762 (internal quotation marks omitted). Thus, the court directed that the defendant be resentenced for first-degree felony murder under the 2013 sentencing legislation. Id.; see also State v. Taylor, 287 Neb. 386, 842 N.W.2d 771, 780-81 (2014) (going through the same analysis for another defendant who had been convicted and sentenced to life without parole pre- *605 Miller for a first-degree murder committed as a juvenile); State v. Ramirez, 287 Neb. 356, 842 N.W.2d 694, 711-13 (2014) (same).
Florida has similarly determined that its new sentencing law for juveniles, passed in response to Miller, should apply to defendants whose sentences became unconstitutional as a result of Miller. See Horsley v. State, 160 So.3d 393, 405, 408 (Fla.2015). In Horsley, the defendant had been sentenced pr e-Miller to life in prison without the possibility of parole for first-degree felony murder under a mandatory sentencing scheme. Id. at 395-96. In 2014, the Florida legislature enacted curative legislation in response to Miller with an effective date of July 1, 2014. Id. at 394-95. Horsley filed a motion to correct his sentence, which had become unconstitutional following Miller. See id. at 396. The intermediate appellate court certified the question of how it should resentence Hors-ley to the Florida Supreme Court. Id. at 397.
The Florida Supreme Court determined that rather than reviving and partially rewriting a previous version of the law, the sentencing court should resentence Hors-ley under the 2014 legislation. See id. at 405-08. It decided that reviving the prior statute was not consistent with legislative intent in light of the new law. See id. at 405-06. It also rejectéd the idea that application of the 2014 legislation would violate the state constitution’s savings clause, which precludes retroactive application of criminal statutes. Id. at 406. It noted that the savings clause was meant to “require the statute in effect at the time of the crime to govern the sentence an offender receives.” Id. Yet, in the case of the juvenile sentencing law, “the statute in effect at the time of the crime is unconstitutional under Miller and the federal constitution, so it cannot, in any event, be enforced.” Id. The court concluded that “[o]n remand, the trial court should hold an individualized sentencing hearing pursuant to [the 2014 law].” Id. at 408; see also Falcon v. State, 162 So.3d 954, 963 (Fla.2015) (concluding Miller should apply retroactively and any defendant whose sentence is invalidated by the retroactive application of Miller should be resen-tenced under the 2014 Florida legislation pursuant to Horsley); Cruz v. State, 164 So.3d 117, 118 (Fla.Dist.Ct.App.2015) (applying the Horsley analysis to a defendant who had been sentenced to life without parole pr e-Miller and remanding for re-sentencing consistent with the 2014 Florida legislation); Mares v. State, 164 So.3d 65, 65 (Fla.Dist.Ct.App.2015) (same); Maize v. State, 164 So.3d 66, 66 (Fla.Dist.Ct.App.2015) (same); Davis v. State, 164 So.3d 67, 67 (Fla.Dist.Ct.App.2015) (same); Moran v. State, 164 So.3d 68, 68-69 (Fla.Dist.Ct.App.2015) (same).
Washington has reached the same conclusion. Following Miller, its legislature enacted a “Miller fix”- that “explicitly applies retrospectively to acts that occurred before its enactment.” In re McNeil, 181 Wash.2d 582, 588-91, 334 P.3d 548 (2014) (en baric). The fix authorized a sentencing range of twenty-five years to life without parole. Id. at 589, 334 P.3d 548. Petitioners who had been convicted and sentenced before Miller argued that they could only receive a sentence that was both on the books and constitutional at the time of their crimes, which was a determinate twenty-year sentence. Id. at 591, 334 P.3d 548. The Washington Supreme Court unanimously disagreed and found the new law applied. Id. at 593, 334 P.3d 548; id. at 596-97, 334 P.3d 548 (McCloud, J., concurring).
The same analysis utilized by the Nebraska, Florida, and Washington supreme courts applies here. If Louisell’s existing *606 sentence is invalid and she must be resen-tenced, the resentencing should take place under the 2015 legislation.
The majority engages in no analysis on these points. Instead, it simply says in a conclusory way, without providing authority or reasoning:
[Although the new statute would appear to authorize a sentence of life with spar-ole after twenty-five years if Louisell were resentenced today, we conclude the subsequent legislation does not affect our consideration of whether that sentence was authorized at the time the district court imposed it.
This sentence contradicts itself. If Louisell’s 2014 sentence wasn’t authorized at the time the district court imposed it, then she is being resentenced today. And this means the 2015 law applies. We should not be performing surgery on the unconstitutional 1987 sentencing law now that the legislature has spoken. Instead, we should follow the range of sentencing options provided by the 2015 sentencing law.
The close question for me is not whether we can sentence Louisell on our own to life with parole. Clearly, we cannot do this. We are not a sentencing court. The close question for me is whether we should af-. firm the district court’s backup sentence of life with parole eligibility after twenty-five years, or remand for resentencing in accordance with the 2015 law. I can see reasonable arguments for both approaches. The district court’s alternative sentence of life with parole eligibility after twenty-five years is authorized under the 2015 legislation. So, by affirming that backup sentence, we would be upholding a sentence that the legislature has approved.
However, the district court did not have the benefit of the 2015 law when it imposed Louisell’s sentence. Normally, the prudent and fairer course of action would be to remand the case to the district court for resentencing under the 2015 legislation. At that point, the .district court would have a number of options, but would presumably select one that makes Louisell available for paróle now. In summary, I do not think we can simply resentence Louisell ourselves based on our edits to a superseded law.
WATERMAN and ZAGER, JJ., join this concurrence in part and dissent in part.

. One initial comment: While my review of the record for the most part confirms the court's statement of background facts, the court has largely presented Louisell's version of the 1987 stabbing death of Stilwell. The jury rejected this version in finding her guilty of first-degree murder. We do not have the trial transcript in the present record, but the court of appeals opinion affirming her conviction presents additional facts that support Louisell's guilt. See State v. Louisell, No. 88-1601, 462 N.W.2d 307 (Iowa Ct.App. Apr. 24, 1990). This is not to deny Louisell’s difficult upbringing, or her achievements in prison.