# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF<br><br><br><br>JEREMIAH BOURGEOIS,<br><br>Petitioner. | No. 74850-5-I<br><br><br>UNPUBLISHED OPINION<br><br>FILED: April 3, 2017 |

VERELLEN, C.J. — In 1992, 14-year-old Jeremiah Bourgeois participated in a murder. In 1993, he was convicted of aggravated first degree murder and sentenced under RCW 10.95.030 to life in prison without the possibility of parole or "any sort of good time calculation." In 2012, the United States Supreme Court in Miller v. Alabama held life sentences without the possibility of parole for juveniles violated the Eighth Amendment of the United States Constitution if there was no opportunity for a judge or jury to consider mitigating circumstances.[1] The Washington State Legislature responded with the "Miller fix" in 2014.[2] Consistent with the Miller fix, the trial court resentenced Bourgeois to a 25-year mandatory minimum and a maximum term of life with no early release time during the mandatory minimum.

---

[1] 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[2] Further clarified by the legislature in 2015.

The federal and state ex post facto clauses forbid the State from enacting laws that impose punishment for an act that was not illegal when committed or that increase the quantum of punishment that applied to a crime when it was committed. The inquiry compares the current law to the law in effect at the time of the crime. Because the Miller fix did not increase Bourgeois' quantum of punishment compared to the punishment in effect both at the time of the 1992 crime and his 1993 sentence, his ex post facto argument fails.

Therefore, we deny Bourgeois' petition.

## FACTS

The underlying facts of the homicide are undisputed. In April 1993, a jury found Jeremiah Bourgeois guilty of aggravated first degree murder and first degree assault.[3] Bourgeois was 14 years old when he committed the crime in 1992. The court sentenced Bourgeois to a mandatory minimum sentence of life in prison without parole and with no good time credit calculation as directed by RCW 10.95.030.[4]

But in 2012, the United States Supreme Court held that a mandatory life sentence without parole for juveniles, without the opportunity for a judge or jury to consider mitigating circumstances, violated the Eighth Amendment of the United States Constitution.[5]

---

[3] State v. Bourgeois, 82 Wn. App. 314, 318, 917 P.2d 1101 (1996).

[4] Id.; former RCW 10.95.030 (1981) ("A person sentenced to life imprisonment under this section shall not have that sentence suspended, deferred, or commuted by any judicial officer and the board of prison terms and paroles or its successor may not parole such prisoner nor reduce the period of confinement in any manner whatsoever including but not limited to any sort of good-time calculation.").

[5] Miller, 132 S. Ct. at 2475.

2

The Washington State Legislature responded by enacting the Miller fix in 2014.[6] The Miller fix amended RCW 10.95.030 to establish new sentencing guidelines for aggravated first degree murder committed by juveniles and to require sentencing courts to "take into account mitigating factors that account for the diminished culpability of youth as provided in Miller."[7] It also provided:

> (3)(a)(i) Any person convicted of the crime of aggravated first degree murder for an offense committed prior to the person's sixteenth birthday shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of twenty-five years.[8]

A juvenile offender who received a mandatory sentence of life without the possibility of early release before the effective date of the Miller fix was entitled to resentencing consistent with the new guidelines.[9]

Chapter 10.95 RCW has consistently provided that a life sentence without parole for aggravated first degree murder prohibits any form of early release from confinement or sentence reduction.[10] Consistent with RCW 10.95.030, the Miller fix mandates that the juvenile offender cannot receive any earned early release time while serving his or

---

[6] In re Pers. Restraint of McNeil, 181 Wn.2d 582, 586, 334 P.3d 548 (2014).

[7] LAWS OF 2014, ch. 130, § 9(3)(b); RCW 10.95.030(3)(b).

[8] LAWS OF 2014, ch. 130, § 9(3)(a)(i).

[9] LAWS OF 2014, ch. 130, § 11(1); RCW 10.95.035(1); LAWS OF 2014, ch. 130, § 16 ("This act . . . takes effect June 1, 2014.").

[10] See LAWS OF 1981, ch. 138, § 3(1) ("A person sentenced to life imprisonment under this section shall not have that sentence suspended, deferred, or commuted by any judicial officer and the board of prison terms and paroles or its successor may not parole such prisoner nor reduce the period of confinement in any manner whatsoever including but not limited to any sort of good-time calculation. The department of social and health services or its successor or any executive official may not permit such prisoner to participate in any sort of release or furlough program."); former RCW 10.95.030(1).

3

her minimum term.[11] The legislature also amended RCW 9.94A.540 by adding minimum terms for juvenile offenders convicted of aggravated first degree murder.[12] That statute currently shares the same language as RCW 10.95.030(3)(c):

> During the minimum term of total confinement, the person shall not be eligible for community custody, earned release time, furlough, home detention, partial confinement, work crew, work release, or any other form of early release authorized under RCW 9.94A.728, or any other form of authorized leave or absence from the correctional facility while not in the direct custody of a corrections officer.[13]

Because the Miller fix applied to Bourgeois, he was entitled to resentencing under RCW 10.95.035. On June 20, 2014, Bourgeois appeared before the King County Superior Court, and the court ordered:

> In accordance with a recent change in Washington state law, specifically Laws of 2014, Ch. 130 § 9(3)(a)(i), it is hereby ordered that the court now imposes a minimum term of 25 years in prison and a maximum term of life in prison. *All other terms and conditions reflected in the Judgment and Sentence entered on April 27, 1993 remain in effect.*[14]

On August 26, 2014, the Indeterminate Sentence Review Board issued an administrative decision concerning Bourgeois' sentence:

---

[11] LAWS OF 2014, ch. 130, § 9(3)(c) ("During the minimum term of total confinement, the person shall not be eligible for community custody, earned release time, furlough, home detention, partial confinement, work crew, work release, or any other form of early release authorized under RCW 9.94A.728, or any other form of authorized leave or absence from the correctional facility while not in the direct custody of a corrections officer."); RCW 10.95.030(3)(c).

[12] LAWS OF 2014, ch. 130, § 2(1)(e); RCW 9.94A.540(1)(e).

[13] RCW 10.95.030(3)(c); RCW 9.94A.540(2).

[14] Ex. 2 to Response of Indeterminate Sentence Review Board and the Department Corrections (Response) (order setting defendant's minimum sentence) (emphasis added).

An administrative decision of the Board has been made and is as follows:

> The Board has received notification that your minimum term of total confinement has been re-determined to 25 years, pursuant to ESSB 5064 (early release consideration). RCW 10.95.030 indicates during the minimum term of total confinement, you are not eligible for good time/earned time credits.
>
> The Board has determined that you have not completed the 25 years of total confinement. You will be scheduled for a JUVBRD release determination <u>after</u> you complete the 25 years of total confinement, and only <u>after</u> the ISRB receives the required psychological evaluation. You should work with your counselor regarding programming opportunities that may be available to you.[15]

The Department of Corrections has not awarded Bourgeois any earned release time during his minimum term.

In 2015, the legislature issued a technical correction[16] to clarify that the prohibition on early release time in RCW 9.94A.729 applies to new minimum term sentences introduced by the <u>Miller</u> fix.[17]

Our Supreme Court transferred Bourgeois' petition for a writ of mandamus to this court to be considered as a personal restraint petition.

---

[15] Ex. 4 to Response (administrative board decision) (underlining omitted).

[16] LAWS OF 2015, ch. 134 ("AN ACT Relating to *technical corrections to* processes for persons sentenced for offenses committed prior to reaching eighteen years of age; amending RCW 9.94A.501, 9.94A.533, 9.94A.728, 9.94A.729, *10.95.030*, 9.94A.730, 10.95.035, and 9.94A.704; and declaring an emergency.") (emphasis added).

[17] LAWS OF 2015, ch. 134, § 4(3) ("An offender may earn early release time as follows: (a) In the case of an offender sentenced pursuant to RCW 10.95.030(3) or 10.95.035, *the offender may not receive any earned early release time during the minimum term of confinement imposed by the court; for any remaining portion of the sentence served by the offender*, the aggregate earned release time may not exceed ten percent of the sentence.") (emphasis added).

## ANALYSIS

Bourgeois argues he is entitled to earned early release credit during his 25-year minimum term. Bourgeois contends the Miller fix and the language added to RCW 9.94A.729 in 2015 (new laws) violate the guarantee against ex post facto laws.

A person may be under unlawful restraint if application of a law violates the constitutional prohibition against ex post facto laws; a constitutional question that we review de novo.[18]

The ex post facto clauses forbid the State from enacting laws which impose punishment for an act which was not punishable when committed, or increase the quantum of punishment that applied to the crime when it was committed.[19] The petitioner must show that the law "operates retroactively, i.e., it applies to conduct that was completed before the law was enacted, and that the challenged law increases the penalty over what it was *at the time of the conduct*."[20] "'Critical to relief under the [e]x [p]ost [f]acto [c]lause is not an individual's right to less punishment, but the lack of *fair notice* and governmental restraint when the legislature increases punishment beyond what was prescribed *when the crime was consummated*.'"[21]

Bourgeois argues the 2012 Miller decision immediately rendered his original sentence unconstitutional and thus, the prohibition on good time credit no longer

---

[18] In re Pers. Restraint of Flint, 174 Wn.2d 539, 545, 277 P.3d 657 (2012); RAP 16.4(c).

[19] In re Pers. Restraint of Powell, 117 Wn.2d 175, 184, 814 P.2d 635 (1991) (citing U.S. CONST. art. 1, § 10, cl. 1; WASH. CONST. art. 1, § 23).

[20] Flint, 174 Wn.2d at 545 (emphasis added).

[21] Powell, 117 Wn.2d at 184-85 (quoting Weaver v. Graham, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)) (emphasis added).

applied. As clarified at oral argument, Bourgeois believes this court should compare the new laws to the earned early release provisions of former RCW 9.94A.150 (1992)[22] of the Sentencing Reform Act of 1981. He asserts he was earning good time credits even though he could not use the good time credits under the statutes in place when he committed the crime. He therefore contends the new laws removed a liberty interest he had under former RCW 9.94A.150. His premise fails.

Bourgeois never earned any good time credits under his original sentence for life without parole. Former RCW 9.94A.150 only applies to individuals sentenced under the Sentencing Reform Act of 1981, ch. 9.94A RCW.[23] But Bourgeois was sentenced under chapter 10.95 RCW, not the Sentencing Reform Act.[24] Further, the language added to RCW 9.94A.728(3)(a) in 2015 was not a *change* in the law; it was merely a technical correction[25] clarifying that the prohibition on good time credit remained in effect for

---

[22] Recodified as RCW 9.94A.728 (LAWS OF 2001, ch. 10, § 6).

[23] Former RCW 9.94A.150 ("No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows: . . . .").

[24] And unlike chapter 10.95 RCW, the Sentencing Reform Act made no mention of sentences for aggravated first degree murder. Former RCW 9.94A.150(1) (1992) provided that the aggregate earned early release time for offenders convicted of a serious violent offense committed on or after July 1, 1990, could not exceed 15 percent of the sentence. But aggravated first degree murder was not included among the list of serious violent offenses. See former RCW 9.94A.030(27) (1992). Where the Sentencing Reform Act did refer to aggravated first degree murder, it was distinguished from first degree murder. See former RCW 9.94A.440(2) (1992).

[25] See Washington State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 303, 174 P.3d 1142 (2007) ("An amendment that 'clarifies or technically corrects an ambiguous statute' is curative. 'The [l]egislature's intent to clarify a statute is manifested by its adoption of the amendment 'soon after controversies arose as to the interpretation of the original act.'") (internal quotation marks omitted) (quoting McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs., 142 Wn.2d 316, 325, 12 P.3d 144 (2000).

individuals resentenced under the Miller fix.

Bourgeois was not deprived of a liberty interest that he "possessed as of the time of the Miller decision"[26] because former RCW 9.94A.150 never applied to him.

Weaver v. Graham is instructive.[27] In Weaver, the petitioner was sentenced to a 15-year prison term for second degree murder.[28] Both at the time of his crime and sentencing, statutes provided a formula for mandatory reductions to the terms of all prisoners who complied with certain prison regulations and state laws.[29] But two years later, the State repealed the original statute and enacted a new formula that reduced the amount of early release time inmates could earn.[30] The State applied the new formula to inmates sentenced before and after its enactment.[31] The United States Supreme Court held the statute violated the guarantee against ex post facto laws.[32] The Court compared the current law to "the law in effect *on the date of the offense*"[33] and found that the reduction in good time credits necessarily increases the time spent in prison and is therefore detrimental to prisoners.[34] We compare the new laws to the law in effect in 1992.

Further, in State v. Pillatos, our Supreme Court noted:

---

[26] Petitioner's Reply at 3.

[27] 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed 2d 17 (1981).

[28] Id. at 25-26.

[29] Id.

[30] Id.

[31] Id. at 27.

[32] Id. at 35-36.

[33] Id. at 30 (emphasis added).

[34] Id. at 30, 33-36.

8

> [T]he argument that an unconstitutional statute does not, in some sense, exist, and therefore cannot justify punishment before the legislature remedies the constitutional flaw, has been raised and rejected many times in many courts. We find these cases compelling. *When a statute has been declared unconstitutional as applied to a certain set of procedures, it does not cease to exist for purposes of the ex post facto clauses. It still exists, and still gives notice that certain conduct is illegal and carries certain consequences.*[35]

Bourgeois provides no authority to support his premise that we should look to a different statute for our ex post facto comparison because Miller invalidated, as unconstitutional, the statute under which he was originally sentenced. His quantum of punishment was not retroactively increased because, as he acknowledges,[36] under his original sentence, he was not entitled to good time credit, nor was he entitled to it under the new laws.

Finally, notice is a central purpose underlying the ex post facto standard.[37] Ignoring the notice provided by former RCW 10.95.030 at the time of Bourgeois' crime and instead looking to former RCW 9.94A.150 would defy the rationale behind the ban on ex post facto laws. As noted in Pillatos, we compare the statute in effect when the crime occurred to the current statute, even if a court subsequently holds the original statute unconstitutional.

---

[35] 159 Wn.2d 459, 476, 150 P.3d 1130 (2007) (internal citations omitted) (emphasis added).

[36] Petitioner's Reply Br. at 2 ("Also, both at the time of his crime and at resentencing[,] life without parole was—as the name implies—defined not to include any good time. RCW 10.95.030(1) (1992).").

[37] See Weaver, 450 U.S. at 28-29 (purpose of ex post facto clause is to "assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed").

Bourgeois' punishment for his 1992 crime has been reduced from life without possibility of parole without any good time credit to a sentence that provides the possibility of early release after a 25-year minimum term sentence. The new laws did not increase his quantum of punishment and therefore did not violate the prohibition against ex post facto laws. We conclude Bourgeois is not unlawfully restrained.

Therefore, we deny Bourgeois' petition.

WE CONCUR:

10