IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) | No. 75194-8-I (Consolidated with No. 75383-5-I) |
| JAMES HINTON, | ) ) | DIVISION ONE |
| Petitioner. | ) ) | UNPUBLISHED OPINION |
| | ) ) | |
| | ) | FILED: December 30, 2019 |

HAZELRIGG-HERNANDEZ, J. — James Hinton seeks resentencing, arguing that recent changes in the law surrounding sentencing for juvenile offenders have rendered his sentence unconstitutional. Because he has not made a prima facie, threshold showing that his sentence would have been different under the current state of the law, he is not entitled to collateral relief. We deny his petition.

## FACTS

In 1998, James Hinton was charged with murder in the second degree, attempted murder in the second degree, and assault in the first degree. Although he was 17 years old when he committed the crimes, he was charged, tried, and convicted as an adult.

At the sentencing hearing, the State detailed the applicable standard sentence ranges:

The standard range for Mr. Hinton on Count 1 is 154 to 254 months, plus 60 months for the firearm, for a total standard range of 214 to 314 months.

On Count 2, the attempted murder, his range is 92.25 to 165 months, plus 60 months for the deadly weapon, for a total of 152.25 to 225 months.

Both terms run consecutively, and the firearm enhancements run consecutively to the underlying crimes as well as to each other.

Count 3, the assault in the first degree, merges with Count 2 and is not counted for purposes of sentencing.

The State recommended that the court impose sentences in the middle of the standard ranges for a total of 453 months confinement. Hinton requested that the court take into account his social history and lack of "substantive counseling" or "intensive alcohol/drug treatment" despite his involvement in the juvenile justice system. He argued that sentences at the low end of the applicable sentence ranges would "impose an appropriate and severe punishment for these crimes."

After hearing statements from the victims' families and from Hinton, the court remarked to Hinton that "[t]he crimes that you've committed are called 'very serious crimes.' That's what the Legislature has called them, and certainly, in whatever civilization we look at, there's hardly anything that is more serious and more devastating than the taking of human life." When announcing its ruling, the court stated:

Again, there is no way to express what a standard sentence should be for a crime that has hurt people so much. Your family is terribly hurt by this, and obviously Ms. Nannauck and Mr. Pashinski's families are both changed forever because of this.

At the same time, because of this, given your youth, I am concerned that you've never had a chance to grow up and you've never had a chance to change the many bad choices that you've made in the course of your life, which has resulted in a very high standard range to begin with.

I don't consider there's mercy; there's no room for mercy in this case; but at the same time I do have to accept that you are the

- 2 -

person that you are and that the terribly bad choices and bad judgment that you've shown in many respects, including on this fateful day, are partly the result of your youth.

The court imposed a sentence at the midpoint of the standard range on count one and slightly below the midpoint of the standard range for count two, plus the firearm enhancements, for a total of 444 months confinement. Hinton's convictions were affirmed on appeal to this court in 2001.

In 2016, Hinton filed a motion for relief from judgment under CrR 7.8 in the superior court. The superior court found that the CrR 7.8 motion was time-barred and transferred it to this court for consideration as a personal restraint petition.

After Hinton's opening brief and the State's response brief had been submitted, the State moved for a stay pending the resolution of State v. Scott[1] in the Washington Supreme Court, which concerned a similar issue. The stay was granted. Following the resolution of Scott, the stay was lifted and the briefing schedule resumed. After Hinton had filed his reply brief and oral argument had been scheduled, the State sought another stay pending the resolution of In re Personal Restraint of Meippen[2] in the Washington Supreme Court. The case was stayed until Meippen was decided, at which point the parties were directed to submit supplemental briefing addressing the effect of Meippen on the issues in this case.

---

[1] 190 Wn.2d 586, 416 P.3d 1182 (2018).
[2] 193 Wn.2d 310, 440 P.3d 978 (2019).

ANALYSIS

Hinton contends that his sentence violates the Eighth Amendment of the U.S. Constitution and article I, section 14 of the Washington Constitution because the sentencing court did not take his age and youthful characteristics into consideration at sentencing. Because cases decided after he was sentenced announced the substantive rule that sentencing courts must consider these factors and this change applies retroactively, Hinton argues, he is serving an unlawful sentence.

Generally, a defendant may not collaterally attack a judgment more than one year after the judgment becomes final. RCW 10.73.090. However, there are exceptions to this time limit. RCW 10.73.100. Under one of these exceptions, the time limit does not apply if a petitioner can show that there has been a significant change in the law, that the change is material to their conviction or sentence, and that the change applies retroactively. RCW 10.73.100(6).

To obtain relief on a personal restraint petition, a petitioner must show both error and a threshold showing of harm. In re Pers. Restraint of McNeil, 181 Wn.2d 582, 589, 334 P.3d 548 (2014). They bear the burden of showing by a preponderance of the evidence that they were actually and substantially prejudiced by the claimed error. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671–72, 101 P.3d 1 (2004). This requires that the petitioner show "'not merely that the errors at his trial created a possibility of prejudice,' but that the outcome would more likely than not have been different had the alleged error not occurred." In re Meippen,

193 Wn.2d at 315–16 (emphasis omitted) (quoting In re Pers. Restraint of Hagler, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982)).

Relatively recently, the United States Supreme Court has begun restricting permissible sentences for juvenile offenders. First, in Roper v. Simmons, the Supreme Court found that the Eighth Amendment forbids imposing the death penalty on juvenile offenders under the age of 18. 543 U.S. 551, 568, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). The Court recognized that certain differences between juvenile and adult offenders make it difficult to conclude with any certainty that a juvenile belongs in the category of the most serious offenders who are subject to the death penalty. Id. at 569–70.

In Graham v. Florida, the Court relied on these same principles to find that the Eighth Amendment also forbids imposition of a life sentence without parole on a juvenile defendant who committed a crime other than homicide. 560 U.S. 48, 74–75, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). However, Graham made clear that States were not required "to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime." Id. at 75. Although the State was not permitted to impose a sentence of life without parole at the outset for these offenders and must give them "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," the Court acknowledged that some offenders would not prove to be suitable for release. Id.

The Court next banned mandatory sentences of life without parole for juvenile homicide offenders in Miller v. Alabama, concluding that a sentencing court must be allowed to take an offender's youth into account. 567 U.S. 460, 474,

132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). This decision did not impose a categorical bar on life sentences without the opportunity for parole for juveniles, but the Court noted that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon" in light of this line of cases. Id. at 479.

The Court later clarified that Miller had created a new substantive rule that applied retroactively. Montgomery v. Louisiana, __ U.S. __, 136 S. Ct. 718, 732, 193 L. Ed. 2d 599 (2016). Although a new constitutional rule of criminal procedure generally does not apply to convictions that were final when the rule was announced, "courts must give retroactive effect to new substantive rules of constitutional law." Id. at 728. Substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." Id. at 729. This includes "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." Id. at 728 (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) (abrogated by Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002)). By contrast, procedural rules regulate the manner by which the defendant's culpability is determined. Id. at 730.

The Court reasoned that Miller rendered life without parole an unconstitutional penalty for an entire class of defendants—those whose crimes reflect the transient immaturity of youth—by determining that this sentence is "excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" Id. at 734 (quoting Miller, 567 U.S. at 479–80). Although Miller

included a procedural component that required the sentencing court to consider the offender's youth, the Court described this component of the holding as "a procedural requirement necessary to implement a substantive guarantee." Id.

Washington courts have further developed this case law. This court found that Miller's application was not limited to "only a literally mandated life sentence." State v. Ronquillo, 190 Wn. App. 765, 775, 361 P.3d 779 (2015). Ronquillo required sentencing courts to take a juvenile offender's youth into account before imposing a de facto life sentence. Id. The Washington Supreme Court adopted this rule in State v. Ramos, holding that "every juvenile offender facing a literal or de facto life-without-parole sentence" was entitled to have their youth taken into consideration before a sentence was imposed. 187 Wn.2d 420, 434–35, 387 P.3d 650 (2017).

The court went further in State v. Houston-Sconiers, holding that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant." 188 Wn.2d 1, 21, 391 P.3d 409 (2017). This case required sentencing courts to "consider mitigating qualities of youth" regardless of the crime charged or expected length of the sentence. Id.

The Washington Supreme Court has not yet definitively stated whether Houston-Sconiers constitutes a significant change in the law that applies retroactively. Although determining retroactivity has historically been an early step in analyzing a collateral attack based on a claimed change in the law, the court avoided the question when it decided In re Meippen. 193 Wn.2d at 317. In this

recent case, the court held that the defendant had not shown "by a preponderance of the evidence that his sentence would have been shorter if the trial court had absolute discretion to depart from the SRA at the time of sentencing." Id. at 312. Because Meippen had not met this "threshold, prima facie burden," the court reasoned that it did not need to determine whether the case fell within an exception to the time bar. Id. at 315.

This case shares many significant facts with Meippen. Like Meippen, Hinton requested a sentence at the bottom of the standard range, which the court elected not to impose. Id. at 313. Accordingly, "[t]he trial court already had the discretion to impose a lesser sentence but declined to do so." Id. at 317. The Supreme Court found that Meippen had not presented any evidence that the trial court would have imposed a lesser sentence if it had the discretion to depart from the standard ranges. Id. Similarly, although the sentencing court remarked that Hinton's youth may have been a factor in his "terribly bad choices and bad judgment," it did not indicate any desire to depart from the standard sentence ranges and imposed mid-range, rather than low-end, sentences.

There are also some differences between these two cases. In Meippen, defense counsel argued that the defendant's age, immaturity, and failure to appreciate the consequences of his actions made a low-end sentence appropriate. Id. at 313, 316. The sentencing court disagreed, stating that it found his actions cold, calculated, and showing extreme indifference toward another human being. Id. at 313. The Supreme Court took this to mean that the sentencing court "clearly intended to impose a sentence at the top of the standard range despite Meippen's

youth." Id. at 317. Hinton did not explicitly argue his youth as a mitigating factor, and therefore it is not clear that the court considered this aspect when imposing a mid-range sentence.

Although the majority in Meippen "save[d] the question [of Houston-Sconiers' retroactivity] for another day," the dissent stated that the question should have been answered before the court reached the issue of prejudice. Id. at 318 (alterations in original) (Wiggins, J., dissenting). The four dissenting justices also indicated that they would find Houston-Sconiers to apply retroactively on collateral review. Id. Division Two of this court recently published an opinion for In re Personal Restraint of Marshall, in which it acknowledged the Supreme Court's avoidance of this issue in Meippen but appeared to follow the analytical steps recommended in the Meippen dissent. No. 49302-1-II, slip op. at 3 (Wash. Ct. App. Sept. 24, 2019), https://www.courts.wa.gov/opinions/pdf/D2%2049302-1-II%20Published%20Opinion.pdf. However, unlike the dissenting justices in Meippen, Division Two held that Houston-Sconiers stated a procedural rule that did not apply retroactively. In re Marshall, slip op. at 1–2.

Although we agree that the retroactivity issue should be addressed first, our review of this case is constrained by the analysis in Meippen. Because we have no Supreme Court authority on which to rely, we assume without deciding that Houston-Sconiers constituted a significant change in the law material to Hinton's sentence that applies retroactively so that we may reach the issue of prejudice.

Despite some factual differences, this case is largely analogous to Meippen. Like Meippen, the sentencing court in this case chose not to exercise its discretion

to impose low-end sentences within the standard ranges. Accordingly, Hinton has not shown by a preponderance of the evidence that he would have received a shorter sentence if the court had absolute discretion to depart from the standard sentence ranges. Because he has not made a prima facie showing of prejudice, he has not met his burden. Hinton's petition is denied.

Denied.

WE CONCUR:

_____

_____ Mann, ACJ

_____ Leach, J.