# IN THE SUPREME COURT OF IOWA

No. 14–0175

Filed June 26, 2015

**STATE OF IOWA,**

    Appellant,

vs.

**YVETTE MARIE LOUISELL,**

    Appellee.

---

Appeal from the Iowa District Court for Story County, James C. Ellefson, Judge.

The State appeals the sentence imposed on a juvenile convicted of first-degree murder, contending the district court lacks authority to impose it. **DISTRICT COURT SENTENCE VACATED AND CASE REMANDED WITH INSTRUCTIONS.**

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, and Stephen H. Holmes, County Attorney, for appellant.

Gordon E. Allen, Johnston, and Matthew L. Shimanovsky (until withdrawal), Urbandale, for appellee.

Rita Bettis and Randall C. Wilson, Des Moines, and Ezekiel R. Edwards and Steven M. Watt, New York, New York, for amici curiae ACLU of Iowa and ACLU Foundation.

**HECHT, Justice.**

Recent decisions of this court have explored the constitutionality of criminal sentences for juvenile offenders. *See generally State v. Lyle*, 854 N.W.2d 378 (Iowa 2014); *State v. Ragland*, 836 N.W.2d 107 (Iowa 2013); *State v. Pearson*, 836 N.W.2d 88 (Iowa 2013); *State v. Null*, 836 N.W.2d 41 (Iowa 2013). Today we consider the nature and extent of a court's discretion in resentencing a juvenile offender convicted of a murder committed in 1987. Because we conclude the district court lacked authority to impose a determinate sentence of twenty-five years, but did have authority to impose a sentence of life in prison with eligibility for parole, we vacate the sentence and remand with instructions.

### I. Background Facts and Proceedings.

In 1988, a jury convicted Yvette Louisell of first-degree murder, stemming from the 1987 stabbing death of Keith Stilwell. At the time she committed the crime, Louisell was seventeen years and five months old and was a student at Iowa State University (ISU).

Louisell's chaotic family background and home environment heavily influenced and shaped the seventeen-year-old prior to the homicide. Louisell's mother suffered from mental illness, and her father was often absent from the family home. When he was present, he and Louisell's mother were often violent with one another; Louisell's first memory is of her parents fighting. At age three, Louisell ingested LSD she found in the house—not knowing what it was—and experienced hallucinations. At age four, Louisell's mother left the home, and soon after that, Louisell's parents divorced. During the next few years, Louisell moved across state lines several different times and was shuttled between homes in Michigan, Wisconsin, Illinois, and Ohio. Eventually, Louisell's grandmother became her legal guardian and primary parental

figure. Louisell attended nine different schools and never attended the same school for two consecutive years until her junior and senior years of high school in Michigan. Yet despite these difficult circumstances, Louisell participated in programs for gifted students and even skipped a grade in elementary school.

Unfortunately, the adversity Louisell faced throughout her childhood did not dissipate once she reached high school and obtained some locational stability. Her father remarried, but did not become more supportive. On one particular occasion, Louisell watched her stepmother chase her father with a knife and became so afraid of further violence that she hid all the other knives in the house. Additionally, because she was younger than her peers and behind them developmentally, Louisell felt isolated from them.

Despite this considerable cumulative adversity, Louisell graduated early from high school at age sixteen. She initially contemplated attending college in Michigan or Indiana, close to home. However, for financial reasons, she accepted a full tuition scholarship and immediately enrolled in a summer enrichment program at ISU, hundreds of miles from home. After Louisell arrived at ISU, she found the sudden independence of a college student overwhelming. She began to struggle academically and, with her self-confidence near zero, started drinking heavily and using marijuana to escape from her emotional stress. As the fall semester continued, Louisell's grades continued to slip and she felt hopeless.

Needing to earn money because she feared ISU would revoke her scholarship for poor academic performance, Louisell answered an advertisement seeking a model for art classes at a local art institute. She initially declined employment because the institute informed her that

posing nude was a requirement of the position. However, she eventually decided she needed the money and agreed to pose nude for one of the institute's classes. After she posed for a few sessions at the institute, Stilwell, one of the students at the institute, befriended Louisell and hired her to model privately in his home. *See Louisell v. Dir. of Iowa Dep't of Corr.*, 178 F.3d 1019, 1021 (8th Cir. 1999). Stilwell was physically handicapped and could walk only by using canes. *See id.* Louisell agreed to the private sessions because Stilwell—an older student twice Louisell's age—offered to compensate her at four times the hourly wage the institute paid her.

After several sessions in Stilwell's home, Louisell decided she did not want to continue modeling privately for Stilwell. Accordingly, she informed Stilwell an upcoming session would be her last. During that final session, Louisell contended at trial, Stilwell cornered her with a knife—despite his handicap—and announced he was going to have sex with her. Reacting instinctively, she claimed she wrested the knife from Stilwell and stabbed him in self-defense to prevent him from raping her. She left Stilwell's home and took Stilwell's wallet with her. She was later apprehended while attempting to use Stilwell's credit card to make a purchase at a local mall. A jury rejected Louisell's version of events and her justification defense, returning a verdict finding Louisell guilty of first-degree murder.

After Louisell's conviction, she was sentenced to life imprisonment without parole,[1] the only sentence authorized in Iowa Code section 902.1

---

[1]In this opinion, we use the acronym LWOP when referring to a sentence of life without parole.

(1987) for that crime.[2] She unsuccessfully pursued a direct appeal and two subsequent applications for postconviction relief in state court. Her habeas petition filed in federal court was also denied. *See Louisell*, 178 F.3d at 1021–22, 1024. She has remained in state custody for twenty-six years since her 1988 conviction and is currently incarcerated at the Iowa Correctional Institution for Women (ICIW) in Mitchellville, Iowa.

In 2010, the United States Supreme Court held the Eighth Amendment prohibits LWOP sentences for juveniles who commit nonhomicide offenses; they must be afforded "some realistic opportunity to obtain release." *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 2034, 176 L. Ed. 2d 825, 850 (2010). Seeking to extend *Graham*'s Eighth Amendment protections to include juveniles convicted of homicide, Louisell filed a motion to correct an illegal sentence in 2011. While the motion was pending, the United States Supreme Court struck down mandatory sentencing schemes that impose LWOP while failing to afford juvenile offenders—even those convicted of homicide—an individualized sentencing determination based on specific factors the Court identified. *Miller v. Alabama*, 567 U.S. ___, ___, ___, 132 S. Ct. 2455, 2468, 2475, 183 L. Ed. 2d 407, 423, 430 (2012) (identifying five factors sentencing courts must consider); *Ragland*, 836 N.W.2d at 115 n.6 (adopting the *Miller* factors).

Louisell's mandatory LWOP sentence fell within the category of sentences *Miller* made invalid. Governor Terry Branstad subsequently commuted Louisell's LWOP sentence—along with the sentences of thirty-seven other juvenile offenders—to life imprisonment with the possibility

---

[2]The language from the 1987 version of this statute remains in effect today. *See* Iowa Code § 902.1(1) (2015).

of parole after sixty years in prison. *See Ragland*, 836 N.W.2d at 110–12 (reproducing one of the Governor's commutation orders in its entirety). Yet, the district court denied Louisell's motion to correct an illegal sentence, concluding *Miller* had only prospective effect. Louisell appealed.

While Louisell's appeal was pending, we held that, as applied to one of the other thirty-seven LWOP sentences imposed on juvenile offenders, the Governor's commutation elevated form over substance. *See id.* at 121. We explained that although parole was technically available to the affected inmates after sixty years in prison, the commuted sentences were "the functional equivalent of life without parole" because they provided no meaningful opportunity for release. *Id.* at 121–22. We also determined that *Miller* applies retroactively. *Id.* at 117.

Following our *Ragland* decision, we summarily vacated Louisell's sentence and remanded the case to the district court for an individualized sentencing hearing. At the hearing, Louisell presented testimony and exhibits tending to show she has been rehabilitated during her twenty-six years in prison. For example, the record shows Louisell completed numerous educational courses and programs while in prison, including an associate's degree in 1998 and a bachelor's degree—with *magna cum laude* honors—in 2009.[3] She learned at least one trade—electrician's helper—and participated in numerous other artistic, musical, and religious activities at the prison. Further, Louisell is a published author who mentors and tutors other incarcerated women.

---

[3]According to one of Louisell's counselors, Louisell is only the second woman in ICIW's history to receive a bachelor's degree while incarcerated.

Key players in Louisell's 1988 murder trial weighed in at the resentencing hearing. The county attorney who prosecuted Louisell testified she believes Louisell has served enough time and has been punished sufficiently. Judge Allan Goode, who presided over Louisell's 1988 criminal trial, authored a letter in which he opined Louisell could make positive contributions to the community if she were released from prison.[4]

Louisell presented other evidence at the resentencing hearing detailing the circumstances awaiting her should she be released from prison. For example, the record includes a letter confirming she has received an offer of employment as an apprentice electrical trimmer. Other evidence was presented to the court describing the support system standing ready to help Louisell reenter society should she be discharged from prison. Together, the evidence created an overarching theme: By all accounts, Louisell is a model inmate who has achieved rehabilitation; grown from a naïve and impulsive youngster to a mature, accomplished, and intelligent woman; and accepted full responsibility for the crime she committed as a juvenile in 1987.

After hearing the testimony and considering the exhibits Louisell presented, the district court acknowledged significant statutory and constitutional uncertainty with regard to the court's sentencing authority after *Miller* and *Ragland*. The court then carefully considered the evidence in the record and thoroughly analyzed each of the *Miller* factors. After doing so, the court resentenced Louisell to a definite term of twenty-five years with credit for time served, thereby discharging her

---

[4]Judge Goode wrote the letter in 2009 to support an application for commutation Louisell made to then-Governor Chet Culver. Judge Goode passed away in 2010.

from prison immediately and releasing her to correctional supervision, as if on parole, for no more than two years. Recognizing the possibility an appellate court might conclude the district court lacked authority to impose a definite term of years for first-degree murder, the court imposed an alternative sentence of life in prison with the possibility of parole after twenty-five years. Under this alternative sentence, the court determined Louisell is now *eligible* for parole, but left to the parole board's discretion when Louisell should in fact be paroled.

The State appealed and also requested an immediate stay of the district court's resentencing order. We granted the stay and retained the appeal to clarify the district court's sentencing authority in this evolving area of law.

## II. Scope of Review.

Illegal sentences can be challenged at any time. Iowa R. Crim. P. 2.24(5)(*a*); *State v. Hoeck*, 843 N.W.2d 67, 70 (Iowa 2014); *Pearson*, 836 N.W.2d at 94. A sentence is illegal if it amounts to cruel and unusual punishment. *Hoeck*, 843 N.W.2d at 70; *Bonilla v. State*, 791 N.W.2d 697, 699 (Iowa 2010). Because appeals asserting cruel and unusual punishment claims require constitutional analysis, our review is typically de novo. *Hoeck*, 843 N.W.2d at 70; *Ragland*, 836 N.W.2d at 113.

Louisell has not appealed from the new sentence, and we therefore do not consider whether it is illegal or cruel and unusual. Rather, this appeal brought by the State requires us to decide whether the district court had the authority to impose a determinate sentence or a sentence setting the date when Louisell became eligible for parole. We review challenges to the legality of a sentence for correction of legal errors. *See Ragland*, 836 N.W.2d at 113.

### III. The Parties' Positions.

**A. The State.** The State concedes Louisell's original LWOP sentence was unconstitutional under *Miller* and *Ragland*, but asserts her corrected sentence of a determinate term of twenty-five years in prison must be vacated because it is not authorized by statute and is therefore illegal. The State insists that no set of facts authorizes a district court to impose a sentence not found in the Iowa Code. The only sentence for first-degree murder, the State contends, is life in prison.

The State rests its argument on separation of powers principles. Our state constitution instructs that "[t]he powers of the government of Iowa shall be divided into three separate departments . . . and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others." Iowa Const. art. III, § 1. According to the State, the legislature has exclusive power to prescribe punishment for criminal convictions, while judicial power is limited to judgments imposing the prescribed punishment. In other words, the State contends a court can only "give effect to the law as written, not . . . rewrite the law in accordance with the court's view of the preferred public policy." *State v. Wagner*, 596 N.W.2d 83, 88 (Iowa 1999). The district court's determination that Louisell be sentenced to twenty-five years in prison with credit for time served—and accordingly, that she should now be discharged from custody—violates these principles, the State asserts, because the legislature has not authorized such a sentence.

The State identifies three dispositional alternatives that would, in its view, comport with the court's constitutional role: (1) uphold the sentence of sixty years under the Governor's commutation order; (2) sever parole ineligibility from Iowa Code section 902.1(1) (2015), leaving

intact Louisell's life sentence but making her immediately eligible for parole and, therefore, affording her release from prison at such time as the board of parole may determine; or (3) move downward along the charging scale to a punishment expressly authorized by the legislature for a different homicide offense.

As we have already held the commuted sentence offering parole eligibility after sixty years in prison is unconstitutional because it was imposed without individualized consideration of the *Miller* factors, *Ragland*, 836 N.W.2d at 122, the State's first proposed dispositional option is a nonstarter. The State's second option is functionally similar to the district court's alternative sentence of life in prison with parole after serving twenty-five years. In both instances, Louisell would immediately be eligible for parole because she has served more than twenty-five years in prison, and the parole board would make the determination of whether and when she will be released on parole. The State characterizes its third proposed dispositional alternative as "invasive," and it therefore discourages us from implementing that alternative. *See Commonwealth v. Brown*, 1 N.E.3d 259, 264–66 (Mass. 2013) (refusing to create "an entirely new penalty scheme ad hoc").

**B. Louisell.** According to Louisell, the court should not defer to the legislature as the State urges because deference would merely perpetuate her illegal LWOP sentence. While she would theoretically be parole-eligible under the State's preferred disposition and under the district court's alternative sentencing option, she contends the likelihood of ever *receiving* parole is negligible given the parole board's steadfast refusal to grant juvenile offenders release, even after the decisions in *Graham*, *Miller*, and *Ragland* were filed. As such, she argues, any sentence other than the district court's first alternative leading to

immediate discharge would deprive her of a meaningful opportunity to reenter society and leave her stuck in parole limbo incompatible with the spirit of *Miller, Null, Pearson* and *Ragland.*

In *Ragland,* we concluded an individualized sentencing hearing including consideration of the *Miller* factors "cures the unconstitutional aspects of [mandatory LWOP] statutes as applied to juvenile offenders until amended by the legislature to establish a different constitutional procedure." *Ragland,* 836 N.W.2d at 119 n.7. Louisell seizes on the phrase "until amended by the legislature," and notes the legislature did not amend section 902.1 to establish a constitutional sentencing procedure for juvenile offenders convicted of first-degree murder in the two legislative sessions held after *Miller* was decided.[5] Thus, Louisell asserts, the resentencing court was *forced* to craft a new sentence because section 902.1 calls for LWOP and is constitutionally infirm. It comes down, she asserts, to a choice between judicial discretion or a punishment we know is cruel and unusual. Louisell insists judicial discretion must rule the day, and the district court's conclusion it had discretion to depart from the strict letter of the unconstitutional statute and craft an appropriate determinate sentence under the circumstances presented here should therefore be affirmed.

Addressing the State's separation-of-powers argument, Louisell notes the judicial function is to apply constitutional principles to decide controversies—not simply point them out. And although we must respect the powers of the legislative and executive departments, Louisell

---

[5]At the time of Louisell's resentencing, only one legislative session had concluded without passage of legislation addressing individualized sentencing of juvenile offenders convicted of class "A" felonies involving homicides. A second legislative session without legislative action on this subject ended prior to the submission of this appeal.

contends the judicial department has inherent power to do justice when the other departments fail to adopt sentencing and parole regimes compatible with article I, section 17 of our constitution. Deference to the other departments in this particular context would, in Louisell's view, prevent sentencing judges from exercising their discretion and nullify her right to be free from cruel and unusual punishment.

### IV. Analysis.

**A. Determinate Term of Twenty-five Years in Prison.** We begin by noting the well-established principle that sentences imposed without statutory authorization are illegal and void. *State v. Ross*, 729 N.W.2d 806, 809 (Iowa 2007); *State v. Freeman*, 705 N.W.2d 286, 287 (Iowa 2005). "We have upheld this principle even in cases in which the illegal sentence was more lenient than that allowed by law and when correction of the sentence would result in an increase in the sentence." *State v. Allen*, 601 N.W.2d 689, 690 (Iowa 1999) (per curiam); *see State v. Draper*, 457 N.W.2d 600, 605–06 (Iowa 1990) (increasing sentences for drug violations to five years when the district court impermissibly imposed only three years); *State v. Ohnmacht*, 342 N.W.2d 838, 842–43, 845 (Iowa 1983) (reinstating prison time because a defendant convicted of first-degree robbery was not statutorily eligible for the suspended sentence he received). Sentencing judges exercise discretion in pursuit of a statutorily mandated goal: to "provide maximum opportunity for the rehabilitation of the defendant[] and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5 (2013). But in implementing this goal, judges may only impose punishment authorized by the legislature within constitutional constraints. "[L]egislative determinations of punishment are entitled to

great deference." *State v. Bruegger*, 773 N.W.2d 862, 872–73 (Iowa 2009).

The Code of Iowa does not currently authorize a term-of-years sentence for a defendant convicted of first-degree murder, even if that defendant committed the crime as a juvenile. Several sections within chapter 902 mandate that class "A" felons, and specifically those convicted of first-degree murder, receive more severe sentences than persons convicted of lesser crimes. For example, Iowa Code section 902.1(1) states that a convicted class "A" felon shall be committed into custody for life.[6] Additionally, section 902.3 excludes class "A" felonies from indeterminate sentencing, reinforcing the idea that life in prison is the intended punishment for such crimes. Iowa Code § 902.3. Finally, section 902.4 excludes class "A" felons from the universe of felons whose sentences may be reconsidered within one year after their conviction. *Id.* § 902.4.

Because there was no statutory authority for the determinate sentence of twenty-five years in prison for Louisell's first-degree murder conviction, that part of the district court's sentencing order must be vacated. *See Freeman*, 705 N.W.2d at 287 ("A sentence is void if the statute does not authorize [it]."); *Draper*, 457 N.W.2d at 605 ("Simply stated, when a sentencing court departs—upward or downward—from the legislatively authorized sentence for a given offense, the pronounced sentence is a nullity . . . ."); *Ohnmacht*, 342 N.W.2d at 842 ("A court has

---

[6]Lesser offenses are notably punished less severely. For example, a term-of-years sentence is prescribed for second-degree murder, a class "B" felony. *Compare* Iowa Code § 707.2 (defining first-degree murder as a class "A" felony), *and id.* § 902.1(1) (indicating all individuals convicted of class "A" felonies receive life sentences), *with id.* § 707.3 ("Murder in the second degree is a class "B" felony. . . . [T]he maximum sentence for a person convicted under this section shall be a period of confinement of not more than fifty years.").

no authority to mitigate punishment by providing for a sentence not authorized by statute.").

**B. Life with Eligibility for Parole After Twenty-Five Years.** We turn now to the district court's alternative sentence of life in prison with parole eligibility after twenty-five years. To determine whether that sentence was within the district court's discretion, we again look to the relevant statutes.

Louisell was originally sentenced under the 1987 edition of the Code of Iowa. At the time, the section establishing sentences for class "A" felonies read, in its entirety:

> Upon a plea of guilty, a verdict of guilty, or a special verdict upon which a judgment of conviction of a class "A" felony may be rendered, the court shall enter a judgment of conviction and shall commit the defendant into the custody of the director of the Iowa department of corrections for the rest of the defendant's life. Nothing in the Iowa corrections code pertaining to deferred judgment, deferred sentence, suspended sentence, or reconsideration of sentence applies to a class "A" felony, and a person convicted of a class "A" felony shall not be released on parole unless the governor commutes the sentence to a term of years.

Iowa Code § 902.1 (1987). In 2011—after *Graham* was decided but before the decision in *Miller* was filed—the legislature amended section 902.1, adding language and renumbering the subsections. 2011 Iowa Acts ch. 131, § 147. After the 2011 amendment, section 902.1 provided:

> 1. Upon a plea of guilty, a verdict of guilty, or a special verdict upon which a judgment of conviction of a class "A" felony may be rendered, the court shall enter a judgment of conviction and shall commit the defendant into the custody of the director of the Iowa department of corrections for the rest of the defendant's life. Nothing in the Iowa corrections code pertaining to deferred judgment, deferred sentence, suspended sentence, or reconsideration of sentence applies to a class "A" felony, and a person convicted of a class "A" felony shall not be released on parole unless the governor commutes the sentence to a term of years.

2. *a.* Notwithstanding subsection 1, a person convicted of a class "A" felony, and who was under the age of eighteen at the time the offense was committed shall be eligible for parole after serving a minimum term of confinement of twenty-five years.

*b.* If a person is paroled pursuant to this subsection the person shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole.

*c.* A person convicted of murder in the first degree in violation of section 707.2 shall not be eligible for parole pursuant to this subsection.

Iowa Code § 902.1 (2013). In sum, the 2011 amendment left the 1987 statutory language fully intact, but renumbered it as section 902.1(1). The amendment also added subsections providing that all juvenile offenders convicted of class "A" felonies—except first-degree murder— shall be eligible for parole after serving twenty-five years. *Id.* § 902.1(2)(*a*), (*c*).

Sentencing courts confronting unconstitutional sentencing statutes may choose the remedy of severance in appropriate cases. Iowa Code § 4.12; *Bonilla,* 791 N.W.2d at 701–02. Severing constitutionally infirm provisions "is appropriate if it does not substantially impair the legislative purpose, if the enactment remains capable of fulfilling the apparent legislative intent, and if the remaining portion of the enactment can be given effect without the invalid provision." *Am. Dog Owners Ass'n, Inc. v. City of Des Moines,* 469 N.W.2d 416, 418 (Iowa 1991). Because Louisell could not be sentenced to mandatory LWOP, *Miller,* *Ragland, Null,* and *Pearson* mandate the final clause of section 902.1(1)— "and a person convicted of a class "A" felony shall not be released on parole unless the governor commutes the sentence to a term of years"— be severed. *See Bonilla,* 791 N.W.2d at 702 (severing the same clause of section 902.1 on review of a juvenile offender's LWOP sentence for a class

"A" felony kidnapping offense). The district court took this approach in resentencing Louisell, correctly noting that the clause within section 902.1 purporting categorically to preclude parole for juvenile offenders convicted of class "A" felonies must be severed.

The district court also correctly concluded subsection 902.1(2)(*c*) must be severed in resentencing Louisell. That subsection providing "[a] person convicted of murder in the first degree . . . shall not be eligible for parole pursuant to this subsection," must be severed because it too would categorically exclude Louisell from the universe of juvenile offenders entitled to a meaningful opportunity for parole. *See Miller*, 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424 (holding the Eighth Amendment prohibited "a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.").

After severing from section 902.1 the two provisions discussed above, we now confront section 902.1(2)(*a*). This subsection makes juvenile offenders convicted of class "A" felonies eligible for parole after a minimum term of confinement of twenty-five years. Iowa Code § 902.1(2)(*a*). The problem here, of course, is that all mandatory minimum sentences for juveniles violate article I, section 17 of the Iowa Constitution. *Lyle*, 854 N.W.2d at 400; *see also* Richard A. Bierschbach & Stephanos Bibas, *Constitutionally Tailoring Punishment*, 112 Mich. L. Rev. 397, 439–40 (2013) (noting mandatory minimum sentences are "crude sledgehammers" that do not "tailor punishments to moral blameworthiness"). Accordingly, *Lyle* requires that the final clause of subsection 902.1(2)(*a*) providing for a mandatory minimum term of confinement also be severed for purposes of sentencing Louisell. With strikethrough added to illustrate the severed parts, that subsection would provide: "Notwithstanding subsection 1, a person convicted of a

class "A" felony, and who was under the age of eighteen at the time the offense was committed shall be eligible for parole ~~after serving a minimum term of confinement of twenty-five years~~." *See* Iowa Code § 902.1(2)(*a*).

As we have noted, we employ the remedy of severing statutory provisions in this context if the excised statute (1) does not substantially impair the legislative purpose, (2) remains capable of fulfilling the apparent legislative intent, and (3) can be given effect without the excised language. *See Am. Dog Owners Ass'n*, 469 N.W.2d at 418. We conclude the leaner section 902.1 remaining after severance of the constitutionally infirm provisions comports with these criteria. The legislative purpose of prescribing the most severe sentences for offenders convicted of murder in the first degree—including juveniles—is maintained. Although sentencing courts must have the discretion to decide juvenile offenders convicted of the most serious of offenses shall be eligible for parole, the legislature's power to prescribe the sentence of life in prison is preserved. Similarly, the severance remedy respects the legislature's intent in establishing the most substantial penalty available under Iowa law and consistent with prevailing constitutional principles for first-degree murder. The third criterion affecting our determination of whether the severance remedy should be employed also augurs in favor of its application here. After constitutionally infirm provisions are severed from section 902.1, the statute can be given effect. In sentencing Louisell, the court had discretion to impose a life sentence with eligibility for parole.[7]

---

[7]As the Court noted in *Miller*, however, "given all [the Court] said in *Roper, Graham*, and [*Miller*] about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to [LWOP] will be

Having severed the provisions of section 902.1 affected by the constitutional infirmity, we conclude the district court had discretion, after considering the *Miller* factors, to sentence Louisell to life in prison with eligibility for parole. Although under the district court's resentencing order Louisell would effectively be eligible for parole immediately because she has already served more than twenty-five years, we conclude the court's sentencing discretion under the circumstances presented here was limited to the question of whether Louisell is eligible for parole. The district court had discretion to conclude Louisell should be eligible for parole immediately, but after excising the unconstitutional statutory provisions detailed above, we conclude the district court did not have discretion under the remaining sentencing framework to decide Louisell's eligibility for parole commenced after serving a specific term of twenty-five years in prison.[8] *See Bonilla*, 791 N.W.2d at 702 (severing from a mandatory LWOP sentence only that which was necessary to ensure a constitutionally permissible punishment). Accordingly, we also

_____

uncommon." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424. The State does not contend the district court erred in exercising discretion to impose a sentence making Louisell eligible for parole.

[8]While this appeal was pending, the legislature passed Senate File 448, and the governor signed the bill into law. *See* Governor's Transmission of Approval (April 24, 2015), *available at* http://coolice.legis.iowa.gov/linc/86/external/govbills/SF448.pdf. Senate File 448 authorizes sentencing judges to consider a list of sentencing factors and select, as the district court did in this case, a minimum term of confinement before making juveniles convicted of first-degree murder eligible for parole. 2015 Iowa Legis. Serv. S.F. 448, § 1 (West 2015). The bill applies to any person "who was convicted of a class 'A' felony prior to, on, or after the [bill's immediate] effective date . . . and who was under the age of eighteen at the time the offense was committed." *Id.* § 5. However, although the new statute would appear to authorize a sentence of life with parole after twenty-five years if Louisell were resentenced today, we conclude the subsequent legislation does not affect our consideration of whether that sentence was authorized at the time the district court imposed it. Furthermore, we express no opinion as to the constitutionality of this new statute.

vacate this aspect of the sentence and remand for entry of a sentence of life in prison with eligibility for parole.[9]

**C. Meaningful Opportunity for Parole.** Our conclusion that the district court's discretion allowed it to conclude Louisell should be parole-eligible does not end our analysis. As we have noted, Louisell asserts the district court's choice of a determinate sentence and discharge from prison should be upheld because, in reality, her eligibility for parole is illusory, not real. She emphasizes that, since *Miller, Ragland, Null,* and *Pearson* were decided, only one of Iowa's thirty-eight juvenile offenders originally sentenced to LWOP has been granted parole. The only one of these prisoners granted parole was conditionally released to hospice care for cancer treatment, and the parole board reserved the right to revisit its decision if her health improved. Grant Rodgers, *Dying Inmate Kristina Fetters Granted Hospice-Only Parole,* Des Moines Reg. (Dec. 3, 2013), http://blogs.desmoinesregister.com/dmr/index.php/ 2013/12/03/board-grants-fetters-parole-to-hospice-only/article.[10]

This historical data, Louisell contends, should give us little confidence that the existing parole system establishes a meaningful opportunity for parole for juvenile offenders serving life sentences. In other words, Louisell posits if juveniles who committed class "A" felonies less serious than murder—such as kidnapping or robbery—are

---

[9]We emphasize our holding today addresses only the scope of the district court's discretion to impose an individualized sentence after considering the *Miller* factors. The question whether the sentence of life in prison with eligibility for parole is in this particular case disproportionate, illegal, or cruel and unusual under either the Eighth Amendment or article I, section 17 of the Iowa Constitution is neither raised nor decided in this appeal.

[10]Fetters passed away while in hospice care. Daniel P. Finney & Linh Ta, *Freed Inmate Kristina Fetters, Convicted as Juvenile, Dies,* Des Moines Reg. (July 28, 2014), *available at* http://www.desmoinesregister.com/story/news/crime-and-courts/2014/ 07/27/kristina-fetters-dies/13238853/.

repeatedly denied parole based on offense severity, there is no realistic opportunity for her to receive parole, no matter how extensively she has been rehabilitated. Without a realistic and meaningful opportunity, a scholar has suggested, "the fact that a teen who was impulsive, reckless, and without moral grounding[] becomes an adult who has none of these traits" is wholly (and wrongly) ignored. Samuel H. Pillsbury, *Talking About Cruelty: The Eighth Amendment and Juvenile Offenders After* Miller v. Alabama, 46 Loy. L.A. L. Rev. 885, 926 (2013). The question whether Louisell—although now eligible for parole—has been denied it in violation of law is not before us in this appeal.[11]

Although the question whether Louisell has been wrongfully denied parole is not ripe for our decision at this juncture, we reaffirm that under both the United States Constitution and the Iowa Constitution, juveniles convicted of crimes must be afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"—if a sentencing judge, exercising discretion, determines parole should be available. *See Graham,* 560 U.S. at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 845–46; *see also Miller,* 567 U.S. at ___, 132 S. Ct. at 2475, 183 L. Ed. 2d at 430 (concluding judges sentencing juveniles convicted of murder must be able to consider mitigating factors and determine whether parole should be available); *Null,* 836 N.W.2d at 67–68. In *Null,* we acknowledged

> it is unclear what the Supreme Court precisely meant in *Graham* by requiring the state to provide "some meaningful opportunity to obtain release based on demonstrated

---

[11]We note, however, that our parole statutes and administrative rules currently provide the board of parole shall parole an inmate when "there is *reasonable probability* that the person can be released without detriment to the community" or to themselves. Iowa Code § 906.4 (2015) (emphasis added); *see also* Iowa Admin. Code r. 205–8.1.

> maturity and rehabilitation." 560 U.S. at 74, 130 S. Ct. at 2030, 176 L. Ed. 2d at 845–46. It did not indicate when such an opportunity must be provided or provide guidance regarding the nature or structure of such a second-look or back-end opportunity. Instead, the Court left it to the states "to explore the means and mechanisms for compliance." *Id.* at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 846.

*Null*, 836 N.W.2d at 67–68 (footnote omitted). Since *Null*, we have not had occasion to explore more fully the meaning of the phrase "meaningful opportunity" in this context. To be sure, a meaningful opportunity must be *realistic*. *Graham*, 560 U.S. at 82, 130 S. Ct. at 2034, 176 L. Ed. 2d at 850. But we must leave for another day the question whether repeated cursory denials of parole deprive juvenile offenders who have shown demonstrable rehabilitation and maturity of a meaningful or realistic opportunity for release.

As presently codified, the Iowa Code and the Iowa Administrative Code enumerate factors the parole board considers when making parole decisions. Iowa Code § 906.5(3) (2015); Iowa Admin. Code r. 205—8.10(1). These codified factors do not closely track the *Miller* factors pertinent to the parole eligibility of juvenile offenders, nor do they account for the mitigating attributes of youth that are constitutionally required sentencing considerations. One scholar has opined that "[w]ithout . . . particularized assessment, youth sentenced to long prison terms, *even with the possibility of parole*, will continue to be denied the 'meaningful opportunity to obtain release' promised by *Graham* and *Miller*." Laura Cohen, *Freedom's Road: Youth, Parole, and the Promise of* Miller v. Alabama *and* Graham v. Florida, 35 Cardozo L. Rev. 1031, 1055–56 (2014) (emphasis added). "And, if the possibility of parole does not afford an inmate a true expectation of release, why should it render valid an otherwise invalid sentence?" *Id.* at 1059; *see also* Richard A.

Bierschbach, *Proportionality and Parole*, 160 U. Pa. L. Rev. 1745, 1761–62 (2012) (asserting that, just as the possibility of commutation or clemency does not provide a meaningful opportunity for release, a possibility of parole that is only remote is not meaningful).

## V. Conclusion.

The district court did not have authority to sentence Louisell to a determinate term of twenty-five years in prison for murder in the first degree. Although the district court did have authority upon consideration of the *Miller* factors to resentence Louisell to life in prison with eligibility for parole, the court did not have authority at the time of resentencing to order commencement of Louisell's eligibility for parole to begin after serving twenty-five years in prison. Accordingly, we vacate the sentencing order and remand for entry of the sentence of life in prison with eligibility for parole.

**DISTRICT COURT SENTENCE VACATED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Mansfield, Waterman, and Zager, JJ., who concur in part and dissent in part.

**MANSFIELD, Justice (concurring in part and dissenting in part).**

I join the court's well-reasoned opinion with the exception of part IV.B, where I respectfully dissent. In part IV.A, the court recognizes the legislature's right to determine appropriate sentences, subject to constitutional constraints. However, in part IV.B, the court disregards the lesson of part IV.A and resentences Louisell itself, instead of giving effect to current law. I believe it is wrong not to give the 2015 legislation its intended effect, and wrong not to apply it to Yvette Louisell's case.[12] As noted by the majority in a footnote, our general assembly recently amended the law relating to sentencing of juveniles convicted of first degree murder. The law now provides:

> [A] defendant convicted of murder in the first degree in violation of section 707.2, and who was under the age of eighteen at the time the offense was committed shall receive one of the following sentences:
>
> (1) Commitment to the director of the department of corrections for the rest of the defendant's life with no possibility of parole unless the governor commutes the sentence to a term of years.
>
> (2) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole after serving a minimum term of confinement as determined by the court.
>
> (3) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole.

---

[12]One initial comment: While my review of the record for most part confirms the court's statement of background facts, the court has largely presented Louisell's version of the 1987 stabbing death of Stilwell. The jury rejected this version in finding her guilty of first-degree murder. We do not have the trial transcript in the present record, but the court of appeals opinion affirming her conviction presents additional facts that support Louisell's guilt. *See State v. Louisell*, No. 88–1601 (Iowa Ct. App. Apr. 24, 1990). This is not to deny Louisell's difficult upbringing, or her achievements in prison.

2015 Iowa Legis. Serv. no. 76 (S.F. 448) (West 2015) (to be codified at Iowa Code § 902.1).

Thus, the legislature has now established three sentencing options—life without parole, life with parole, and life with parole eligibility after service of a term of years. *Id.* § 1. This law applies to "a person who was convicted of a class 'A' felony prior to, on, or after the effective date of this Act and who was under the age of eighteen at the time the offense was committed." *Id.* § 5. Hence, by its terms, the law applies to Louisell.

Generally, of course, criminal defendants are sentenced based on the law that was in effect at the time the crime was committed. However, Iowa Code section 4.13(2) provides that if the punishment for an offense is reduced, then punishment "if not already imposed shall be imposed according to the statute as amended." Iowa Code § 4.13(2) (2015); *see State v. Chrisman*, 514 N.W.2d 57, 61, 63 (Iowa 1994) (holding that where legislation reducing the punishment became effective after the crime was committed but before sentencing, the new legislation applied). The legislature's 2015 amendment amounts to a reduction in the prior mandatory life-without-parole (LWOP) sentence. Thus, with respect to any juvenile homicide defendant who has not yet been sentenced, or whose LWOP sentence has been vacated and has not yet been resentenced, section 4.13(2) would apply—not to mention the fact (already noted) that the 2015 legislation itself says that it applies retroactively. *See* 2015 Iowa Legis. Serv. no. 76 (S.F. 448) § 5.

Our colleagues in Nebraska recently had to sort through similar issues. In 2013, responding to the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the Nebraska legislature eliminated mandatory LWOP for

juveniles who commit first-degree murder and provided a sentencing range of forty years to life. *See State v. Castaneda*, 842 N.W.2d 740, 759 (Neb. 2014). The Nebraska Supreme Court then had to address the case of a defendant who had been sentenced to LWOP before *Miller* but whose appeal was still pending at the time of the 2013 amendment. *Id.* at 760. The defendant argued his LWOP sentence should be struck down and he should be given the sentence for second-degree murder as it existed when he committed the offense. *Id.* at 760–61. The state maintained the defendant should be resentenced under the 2013 legislation. *Id.* at 760.

The court agreed with the state. *Id.* at 761–62. The court found no ex post facto violation because the new law was ameliorative—it reduced the sentence for first-degree murder. *Id.* And the court found that application of the new law was supported by a Nebraska principle of legal interpretation similar to Iowa Code section 4.13(2), which provided that "[w]here a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise." *Id.* at 762 (internal quotation marks omitted). Thus, the court directed that the defendant be resentenced for first-degree felony murder under the 2013 sentencing legislation. *Id.*; *see also State v. Taylor*, 842 N.W.2d 771, 780–81 (Neb. 2014) (going through the same analysis for another defendant who had been convicted and sentenced to life without parole pre-*Miller* for a first-degree murder committed as a juvenile); *State v. Ramirez*, 842 N.W.2d 694, 711–13 (Neb. 2014) (same).

Florida has similarly determined that its new sentencing law for juveniles, passed in response to *Miller*, should apply to defendants whose sentences became unconstitutional as a result of *Miller*. *See Horsley v.*

*State*, 160 So. 3d 393, 405, 408 (Fla. 2015). In *Horsley*, the defendant had been sentenced pre-*Miller* to life in prison without the possibility of parole for first-degree felony murder under a mandatory sentencing scheme. *Id.* at 395–96. In 2014, the Florida legislature enacted curative legislation in response to *Miller* with an effective date of July 1, 2014. *Id.* at 394–95. Horsley filed a motion to correct his sentence, which had become unconstitutional following *Miller.* *See id.* at 396. The intermediate appellate court certified the question of how it should resentence Horsley to the Florida Supreme Court. *Id.* at 397.

The Florida Supreme Court determined that rather than reviving and partially rewriting a previous version of the law, the sentencing court should resentence Horsley under the 2014 legislation. *See id.* at 405–08. It decided that reviving the prior statute was not consistent with legislative intent in light of the new law. *See id.* at 405–06. It also rejected the idea that application of the 2014 legislation would violate the state constitution's savings clause, which precludes retroactive application of criminal statutes. *Id.* at 406. It noted that the savings clause was meant to "require the statute in effect at the time of the crime to govern the sentence an offender receives." *Id.* Yet, in the case of the juvenile sentencing law, "the statute in effect at the time of the crime is unconstitutional under *Miller* and the federal constitution, so it cannot, in any event, be enforced." *Id.* The court concluded that "[o]n remand, the trial court should hold an individualized sentencing hearing pursuant to [the 2014 law]." *Id.* at 408; *see also Falcon v. State*, ___ So. 3d ___, ___, 2015 WL 1239365, at *8–9 (Fla. Mar. 19, 2015) (concluding *Miller* should apply retroactively and any defendant whose sentence is invalidated by the retroactive application of *Miller* should be resentenced under the 2014 Florida legislation pursuant to *Horsley*); *Cruz v. State*,

___ So. 3d ___, ___ , 2015 WL 2137783, at *1 (Fla. Dist. Ct. App. May 8, 2015) (applying the *Horsley* analysis to a defendant who had been sentenced to life without parole pre-*Miller* and remanding for resentencing consistent with the 2014 Florida legislation); *Mares v. State*, ___ So. 3d ___, ___, 2015 WL 2078179, at *1 (Fla. Dist. Ct. App. May 6, 2015) (same); *Maize v. State*, ___ So. 3d ___, ___, 2015 WL 2078212, at *1 (Fla. Dist. Ct. App. May 6, 2015) (same); *Davis v. State*, ___ So. 3d ___, ___, 2015 WL 2078277, at *1 (Fla. Dist. Ct. App. May 6, 2015) (same); *Moran v. State*, ___ So. 3d ___, ___, 2015 WL 2078374, at *1 (Fla. Dist. Ct. App. May 6, 2015) (same).

Washington has reached the same conclusion. Following *Miller*, its legislature enacted a "*Miller* fix" that "explicitly applies retrospectively to acts that occurred before its enactment." *In re McNeil*, 334 P.3d 548, 588–91 (Wash. 2014) (en banc). The fix authorized a sentencing range of twenty-five years to life without parole. *Id.* at 589. Petitioners who had been convicted and sentenced before *Miller* argued that they could only receive a sentence that was both on the books and constitutional at the time of their crimes, which was a determinate twenty-year sentence. *Id.* at 591. The Washington Supreme Court unanimously disagreed and found the new law applied. *Id.* at 593; *id.* at 596–97 (McCloud, J., concurring).

The same analysis utilized by the Nebraska, Florida, and Washington supreme courts applies here. If Louisell's existing sentence is invalid and she must be resentenced, the resentencing should take place under the 2015 legislation.

The majority engages in no analysis on these points. Instead, it simply says in a conclusory way, without providing authority or reasoning:

> [A]lthough the new statute would appear to authorize a sentence of life with parole after twenty-five years if Louisell were resentenced today, we conclude the subsequent legislation does not affect our consideration of whether that sentence was authorized at the time the district court imposed it.

This sentence contradicts itself. If Louisell's 2014 sentence wasn't authorized at the time the district court imposed it, then she *is being resentenced today*. And this means the 2015 law applies. We should not be performing surgery on the unconstitutional 1987 sentencing law now that the legislature has spoken. Instead, we should follow the range of sentencing options provided by the 2015 sentencing law.

The close question for me is not whether we can sentence Louisell on our own to life with parole. Clearly, we cannot do this. We are not a sentencing court. The close question for me is whether we should affirm the district court's backup sentence of life with parole eligibility after twenty-five years, or remand for resentencing in accordance with the 2015 law. I can see reasonable arguments for both approaches. The district court's alternative sentence of life with parole eligibility after twenty-five years is authorized under the 2015 legislation. So, by affirming that backup sentence, we would be upholding a sentence that the legislature has approved.

However, the district court did not have the benefit of the 2015 law when it imposed Louisell's sentence. Normally, the prudent and fairer course of action would be to remand the case to the district court for resentencing under the 2015 legislation. At that point, the district court would have a number of options, but would presumably select one that makes Louisell available for parole now. In summary, I do not think we can simply resentence Louisell ourselves based on our edits to a superseded law.

Waterman and Zager, JJ., join this concurrence in part and dissent in part.