# IN THE COURT OF APPEALS OF IOWA

No. 17-0232
Filed March 7, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DIANNA MARIE WINDER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Sioux County, Patrick H. Tott, Judge.


        Dianna Winder appeals her convictions of child endangerment causing bodily injury and assault causing bodily injury. **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.


        Considered by Danilson, C.J., Vaitheswaran, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Dianna Winder appeals her convictions of child endangerment causing bodily injury and assault causing bodily injury. She contends her attorney was ineffective in failing to properly challenge the sufficiency of the evidence supporting the jury's findings of guilt and claims the district court erred in ordering restitution for the costs of prosecution. We affirm.

## I.    *Background Facts and Proceedings*

The jury could have found the following from the evidence presented at trial. At around 7:00 a.m. on November 11, 2015, Kaitlin Rollins left her fifteen-month-old son, L.J., in the care of Dianna Winder. Winder provided daycare services for children out of her home in Maurice. At around 5:00 p.m., as she was getting done with work for the day, Rollins received a text message from Winder saying L.J. was "having an allergic reaction." Rollins was "surprise[ed]" because L.J. had no known allergies. Rollins went to Winder's house to get L.J. and observed "thick red lines" on L.J.'s face "from his ear to his forehead" and L.J.'s "ear was purple and red"; she did not think the marks looked like a rash. As Rollins and Winder discussed what may have happened to L.J., Winder "threw her hands in the air" and "said she didn't hit him." Winder said L.J. had fallen that day while he was playing. Rollins recalled that L.J.'s face looked "normal," with no visible injuries, when she left him in Winder's care that morning.

Rollins took L.J. to the emergency room, arriving around 5:15 p.m. L.J. was alert and calm. A paramedic examined L.J. and noted he had "abrasions from the middle of the forehead around to the left ear" with "purple bruising" and "what looks like some possible finger marks near the left temple." The paramedic

noted, "The left ear is especially purple with scrapes." A physician examined L.J. and noted he had "[h]ead and facial abrasions" and "evidence of what looks to be trauma on the left side of his head and face." A sheriff's deputy and a department of human services (DHS) caseworker were called to the hospital to investigate. The deputy concluded L.J.'s injury came from a right hand wearing rings. A nurse examined L.J. the next day and opined his injuries were "indicative of inflicted injuries likely from a hand," with the perpendicular marks "possibly [caused by] a ring." Winder wore two rings on her right hand on the day L.J. was injured. The other people L.J. was around that day were interviewed; investigators did not suspect they caused L.J.'s injuries.

The State charged Winder with child endangerment causing bodily injury and assault causing bodily injury. At the close of the State's evidence, Winder's attorney made a general motion for judgment of acquittal, which the district court overruled. A jury subsequently found Winder guilty. Winder appealed following imposition of sentence. Additional facts will be discussed below as are relevant to her claims on appeal.

## II. *Ineffective Assistance of Counsel*

Winder claims her attorney was ineffective in failing to make a detailed challenge to the sufficiency of the evidence supporting the jury's findings of guilt. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996) (analyzing a defendant's challenge to the sufficiency of the evidence under an ineffective-assistance-of-counsel rubric when a general motion for judgment of acquittal was inadequate to preserve error on the sufficiency-of-the-evidence claim). "A claim of ineffective assistance of trial counsel based on the failure of counsel to raise a

claim of insufficient evidence to support a conviction is a matter that normally can be decided on direct appeal." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004). If the record "fails to reveal substantial evidence to support the convictions, counsel was ineffective for failing to properly raise the issue and prejudice resulted. On the other hand, if the record reveals substantial evidence, counsel's failure to raise the claim of error could not be prejudicial." *Id.* Our review is de novo. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

The jury was instructed the State would have to prove the following elements of child endangerment causing bodily injury:

> 1. On or about the 11th day of November, 2015, Ms. Winder was the person having custody or control of [L.J.]
> 2. [L.J.] was under the age of fourteen years.
> 3. Ms. Winder acted with knowledge that she was creating a substantial risk to [L.J.'s] physical health or safety. (*See* Instruction No. 14 for definition of "acted with knowledge.")
> 4. Ms. Winder's act resulted in bodily injury to [L.J.] as defined in Instruction No. 14.

*See* Iowa Code § 726.6 (2015). The jury was instructed the State would have to prove the following elements of assault causing bodily injury:

> 1. On or about the 11th day of November, 2015, Ms. Winder did an act which was intended to cause pain or injury or result in physical contact which was insulting or offensive to him.
> 2. Ms. Winder had the apparent ability to do the act.
> 3. Ms. Winder's act caused a bodily injury to [L.J.] as defined in Instruction No. 14.

*See id.* §§ 708.1(2), 708.2(2).

The jury was further instructed in Instruction No. 14: "for Ms. Winder to have knowledge of something means she had a conscious awareness that she was creating a substantial risk to [L.J.'s] physical health or safety by her action(s)"; "'bodily injury' means physical pain, illness, or any impairment of

physical condition"; and "'apparent ability' means a reasonable person in the defendant's position would expect the act to be completed under the existing facts and circumstances."

Winder challenges the identity element of both convictions, claiming the State failed to prove she was the cause of L.J.'s injuries. According to Winder, "While she did have custody and control of L.J. between 7:00 a.m. and 5:15, she was not the only person who had contact with L.J." She claims, "The interaction of so many people with L.J. that day prevents the jury from inferring Winder was the cause of L.J.'s injuries and [that she] assaulted him."

The jury heard testimony that L.J. was in Winder's exclusive control throughout the day except for approximately one hour during the late morning when she left L.J. in the care of her friend, Brenda VanEngelenhoven, while she took her nine-year-old daughter, P.V., to the doctor. But there was no indication L.J. was injured while he was with VanEngelenhoven, and he had no visible injuries when VanEngelenhoven returned him to Winder's care. Indeed, the other people L.J. was around that day (VanEngelenhoven, VanEngelenhoven's husband, and P.V.) were interviewed by law enforcement and DHS. The DHS caseworker testified she did not have any concerns about those individuals and she did not suspect they caused L.J.'s injuries. *See, e.g., State v. Parmer*, No. 13-2033, 2015 WL 2393652, at *10 (Iowa Ct. App. May 20, 2015) ("The child's last injuries occurred during times the child was in [the defendant's] care."). The jury also heard testimony that L.J.'s injuries were consistent with being struck by a right hand wearing rings; Winder wore rings on her right hand. Finally, the jury learned Winder made the unprompted statement to Rollins that "she didn't hit

him." These facts amount to substantial evidence from which the jury could conclude Winder was the cause of L.J.'s injuries.

Winder also challenges the knowledge element of her child-endangerment conviction. Winder claims, "Should this court find that there is sufficient evidence [she] caused the injuries to L.J. by slapping him, . . . she did not act with knowledge that she was creating a substantial risk to L.J.'s physical health and safety as required by the third element of child endangerment." Winder states, "Not to down play the seriousness of someone hitting a child, but . . . the evidence was insufficient to find the act of slapping was done with a conscious awareness that she was creating a substantial risk to [L.J.'s] physical health and safety."

To prove this element the jury had to find Winder "had a conscious awareness that she was creating a substantial risk to [L.J.'s] physical health or safety by her action(s)." A "substantial risk" means "[t]he very real possibility of danger to a child's physical health or safety." *State v. Schlitter*, 881 N.W.2d 380, 390 (Iowa 2016) (citation omitted). "The risk does not have to be likely, just real or identifiable." *Id.*

L.J. was a fifteen-month-old child. The jury heard testimony that a strike to a toddler's head poses a particular risk of injury to the child's health or safety, and there is "[m]ore concern" of a brain injury. The nurse who examined L.J. testified, "Sudden impacts to the head put a child of this age at more risk for serious injury." She further explained:

> Toddlers, specifically, their heads are larger in proportion to the rest
> of their body, so their heads are heavy. They have less neck
> control than an older child, so with an impact there may be more of

a[n] acceleration of the head impacting other objects or other furniture or whatever the case may be. Also, a toddler cannot anticipate the force of . . . a hand coming at them. An older child is more of one [whose] development . . . could anticipate something like that happening, could move away from a potential situation or an injury or impact coming at them. Toddler[s] at this age developmentally would not see that coming.

The jury viewed evidence depicting L.J.'s visible injuries, hours after their infliction. The jury also learned that Winder told Rollins that L.J. was having an allergic reaction, which indicates she knew hitting a child was wrong. The State presented substantial evidence from which the jury could conclude Winder knew she created a very real possibility of danger to L.J.'s health or safety when she struck him.

As the record reveals substantial evidence to support the jury's findings of guilt, trial counsel was not ineffective in failing to make a more detailed challenge to the sufficiency of the evidence. *See Truesdell*, 679 N.W.2d at 616 ("[I]f the record reveals substantial evidence, counsel's failure to raise the claim of error could not be prejudicial."). We affirm on this issue.

## III.    *Restitution*

The sentencing court is required to order a defendant to pay certain fees and costs associated with the prosecution of the case. *See* Iowa Code § 910.2 (governing the court's ability to order the defendant to pay restitution "[i]n all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered"). In addition, section 815.13 allows the county or city to recover fees and costs incurred in prosecuting a criminal action "unless the defendant is found not guilty or the action is dismissed."

Winder claims the court erred in ordering her to pay restitution in the amount of $818.50 for the cost of prosecution under section 815.13. That section provides:

> The county or city which has the duty to prosecute a criminal action shall pay the costs of depositions taken on behalf of the prosecution, the costs of transcripts requested by the prosecution, and in criminal actions prosecuted by the county or city under county or city ordinance the fees that are payable to the clerk of the district court for services rendered and the court costs taxed in connection with the trial of the action or appeals from the judgment. The county or city shall pay witness fees and mileage in trials of criminal actions prosecuted by the county or city under county or city ordinance. These fees and costs are recoverable by the county or city from the defendant unless the defendant is found not guilty or the action is dismissed, in which case the state shall pay the witness fees and mileage in cases prosecuted under state law.

Iowa Code § 815.13. We review this claim for correction of errors at law. *See State v. Louisell*, 865 N.W.2d 590, 596 (Iowa 2015).

As the supreme court has instructed, section 815.13 "authorizes the collection of costs of a criminal prosecution from a defendant 'unless the defendant is found not guilty.'"[1] *State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991) (quoting Iowa Code § 815.13). "[T]he defendant should only be ordered to pay restitution on the counts on which the State obtains a conviction." *State v. Johnson*, 887 N.W.2d 178, 181 (Iowa Ct. App. 2016) (citing *Petrie*, 478 N.W.2d at 622). Here, there is no question Winder was assessed costs "clearly attributable to the charges on which [she was] convicted," because no charges

---

[1] Winder points to this court's decision in *State v. Valdez*, No. 13-0183, 2014 WL 1495485, at *7 (Iowa Ct. App. Apr. 16, 2014), as support for her contention. In that case, we accepted the State's concession that "the court erred in ordering the recovery of the costs of prosecution under section 815.13," and we vacated the restitution order without considering the merits of the defendant's claim. Here, the State submits *Valdez* "conflicts with Iowa Supreme Court and Court of Appeals decisions." In any event, *Valdez* is not persuasive or binding with regard to Winder's claim in this appeal.

were dismissed. *See id.* ("A defendant may be assessed costs clearly attributable to the charges on which the defendant is convicted but may not be assessed costs clearly attributable to dismissed charges."). The court's restitution order was authorized under the statute. We affirm on this issue.

Upon consideration of the issues raised on appeal, we affirm Winder's convictions for child endangerment causing bodily injury and assault causing bodily injury.

**AFFIRMED.**