# IN THE SUPREME COURT OF IOWA

No. 20–0396

Submitted February 22, 2022—Filed June 10, 2022

**FERNANDO SANDOVAL,**

    Appellant,

vs.

**STATE OF IOWA,**

    Appellee.

---

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

Appellant appeals from the dismissal of his application for postconviction relief as barred by the statute of limitations and challenges the constitutionality of his sentence to life imprisonment. **AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Mansfield, Oxley, and McDermott, JJ., joined. Appel, J., filed an opinion concurring in part and dissenting in part.

Jessica Maffitt of Benzoni Law Office, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.

**McDONALD, Justice.**

In February 2005, Fernando Sandoval was convicted of two counts of first-degree murder and two counts of attempted murder. He was sentenced to serve concurrent terms of life imprisonment without the possibility of parole for the murder convictions and twenty-five years' imprisonment for the attempted murder convictions. Sandoval unsuccessfully challenged his convictions on direct appeal and in three different applications for postconviction relief. This appeal arises out of the dismissal of Sandoval's fourth application for postconviction relief, which the district court held was barred by the three-year statute of limitations set forth in Iowa Code section 822.3 (2019). Sandoval contends the district court erred in dismissing his fourth application for postconviction relief. He also asserts a new claim on appeal. He contends that because he was only nineteen at the time he murdered two people, his mandatory life sentences without the possibility of parole violate the federal and state constitutional prohibitions against "cruel and unusual punishment." U.S. Const. amend. VIII; Iowa Const. art. I, § 17.

I.

Generally, an application for postconviction relief "must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3. In *Allison v. State,* this court held that a second application for postconviction relief filed beyond the three-year-limitations period would relate back to the filing of the first application and be considered timely if three conditions were met: (1) the

first application was timely filed; (2) the second application alleged prior postconviction counsel provided ineffective assistance in presenting the first application; and (3) the second application was "filed promptly after the conclusion of the first [postconviction relief] action." 914 N.W.2d 866, 891 (Iowa 2018). Subsequently, the general assembly amended section 822.3 and abrogated *Allison.* 2019 Iowa Acts ch. 140, § 34 (codified at Iowa Code § 822.3 (2020)). Effective July 1, 2019, section 822.3 provides that "[a]n allegation of ineffective assistance of counsel in a prior case under this chapter shall not toll or extend the limitation periods in this section nor shall such claim relate back to a prior filing to avoid the application of the limitation periods." *Id.*

Sandoval has repeatedly challenged his convictions since 2005. He pursued a direct appeal after being sentenced, and the court of appeals affirmed his convictions. *State v. Sandoval*, No. 05–0426, 2006 WL 3018152, at *6 (Iowa Ct. App. Oct. 25, 2006). Procedendo issued on November 21, 2006. Sandoval filed his first application for postconviction relief in June 2007. The application was dismissed on the merits in December 2008, and this court dismissed the appeal as frivolous. Sandoval filed two additional applications for postconviction relief in May 2012 and January 2016, both of which were dismissed as time-barred. The court of appeals affirmed both dismissals. *See Sandoval v. State*, No. 16–1875, 2018 WL 2727690, at *2 (Iowa Ct. App. June 6, 2018); *Sandoval v. State*, No. 14–0341, 2015 WL 1849404, at *2 (Iowa Ct. App. Apr. 22, 2015). And in April 2015, Sandoval filed a motion for new trial in the underlying criminal case, which was denied.

At issue in this case is Sandoval's fourth application for postconviction relief. Sandoval filed the application on July 8, 2019, after the effective date of the amendments to Iowa Code section 822.3. In his application, Sandoval alleged his trial counsel provided ineffective assistance in failing to investigate the qualifications of Sandoval's translator at trial, in failing to investigate the case, and in failing to challenge questionable jury instructions. He further alleged that his appellate counsel and first postconviction counsel provided ineffective assistance in failing to raise these claims. The district court dismissed the application as time-barred pursuant to section 822.3. The district court rejected the contention that *Allison* provided Sandoval with relief. The district court concluded that the amendment to section 822.3 abrogated *Allison.* In addition, the district court concluded that *Allison* was not applicable because the application for postconviction relief was Sandoval's fourth, not his second, and because Sandoval did not promptly file his fourth application after the conclusion of the first postconviction relief action. Finally, the district court rejected Sandoval's contention that new evidence excused the otherwise untimely application.

The district court did not err in concluding Sandoval's fourth application for postconviction relief was barred by the statute of limitations. With respect to Sandoval's direct appeal, procedendo issued on November 21, 2006. Sandoval's fourth application, filed in July 2019, is outside the three-year statute of limitations. And *Allison* does not provide Sandoval with any relief. As the district court correctly explained, *Allison* was abrogated by the amendment to

section 822.3, effective July 1, 2019, and Sandoval filed his application on July 8.

Sandoval contends the amendment abrogating *Allison* is not applicable here because he mailed his fourth application for postconviction relief on June 27, 2019, prior to the effective date of the amendment. Sandoval asserts that under the "prison mailbox rule," his application should be deemed filed on the date he placed the application in the prison mail system. *See, e.g.*, *Moore v. United States*, 173 F.3d 1131, 1135 (8th Cir. 1999) (stating a filing "is deemed timely filed when an inmate deposits the notice in the prison mail system prior to the expiration of the filing deadline"). Iowa has not adopted the prison mailbox rule, and we need not decide whether to do so here.

Even if Sandoval's fourth application should be deemed filed on the date he placed it in the prison mail system, *Allison* would still not provide him with any relief. *Allison* held only that a second application for postconviction relief could relate back to a timely filed first application. *See* 914 N.W.2d at 891. The court of appeals repeatedly has reached the same conclusion. *See, e.g.*, *Dixon v. State*, No. 19–1886, 2021 WL 1907152, at *2 (Iowa Ct. App. May 12, 2021) (collecting cases that hold *Allison* applies only to a second postconviction relief application and not to third or subsequent applications). But this is Sandoval's fourth application. *See Garcia v. State*, No. 20–0883, 2022 WL 108561, at *3 (Iowa Ct. App. Jan. 12, 2022) ("Since this is [applicant's] fourth PCR application, *Allison* is inapplicable.") In addition, *Allison* held a later-filed application only related back if filed "promptly" after the conclusion of the first preceding. *See*

*Allison*, 914 N.W.2d at 891. Sandoval's first application for postconviction relief was dismissed on December 31, 2008, and his appeal of that dismissal was dismissed as frivolous in 2010. The dismissal of his second application was affirmed on appeal in 2015, and the dismissal of his third application was affirmed on appeal in 2018. Sandoval's fourth application for postconviction relief was not filed promptly after the conclusion of his first, second, or third applications for postconviction relief. The court of appeals repeatedly has held that a delay of more than six months is not prompt. *See, e.g., Garcia*, 2022 WL 108561, at *4 ("While 'promptly' is not defined in *Allison*, our court has previously held that delays of 'more than six months,' 'almost six months,' and even so little as one hundred twenty-one days are too long to meet the promptness requirement of *Allison*." (footnotes omitted)); *Polk v. State*, No. 18–0309, 2019 WL 3945964, at *2 (Iowa Ct. App. Aug. 21, 2019) (six-month delay in filing second postconviction relief application held not prompt). We agree.

Sandoval further contends constitutional principles of equal protection and due process require that he be allowed to pursue his untimely fourth application for postconviction relief notwithstanding the statute of limitations. Sandoval failed to raise these issues in the district court, and the district court did not rule on these constitutional challenges. These challenges are thus not preserved for appellate review, and we will not consider them for the first time on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error

for appeal."); *State v. Webb*, 516 N.W.2d 824, 828 (Iowa 1994) ("We may not consider an issue that is raised for the first time on appeal, 'even if it is of constitutional dimension.' " (quoting *Patchette v. State*, 374 N.W.2d 397, 401 (Iowa 1985))).

## II.

For the first time on appeal, Sandoval argues that his mandatory life sentences without the possibility of parole are illegal because they constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and article I, section 17 of the Iowa Constitution. "Where, as here, the claim is that the sentence itself is inherently illegal, whether based on constitution or statute . . . the claim may be brought at any time." *State v. Bruegger*, 773 N.W.2d 862, 872 (Iowa 2009). This includes claims brought for the first time on appeal. *See id.* at 870–72. We exercise our discretion to address the merits of Sandoval's challenge to his sentences.

"It is important to clarify the terminology of cruel and unusual punishment jurisprudence." *State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012). The "lexicon for [cruel and unusual punishment] analysis no longer includes the terms 'facial challenge' and 'as-applied challenge.' " *Id.* at 639–40. "Instead, the defendant must challenge his sentence under the 'categorical' approach or make a 'gross proportionality challenge to [the] particular defendant's sentence.' " *Id.* at 640 (alteration in original) (quoting *Graham v. Florida*, 560 U.S. 48, 61 (2010)). "Under the categorical approach, the question is whether a particular *sentencing practice* violates the Eighth Amendment" or article I, section 17. *Id.* Under a gross

proportionality approach, a defendant is allowed to challenge his sentence by "emphasizing the specific facts of the case." *Id.* at 648–49 (quoting *Bruegger*, 773 N.W.2d at 884).

It is not readily apparent whether Sandoval is asserting a gross disproportionality challenge or categorical challenge to his sentences. On the one hand, Sandoval asserts that his sentence was "grossly disproportionate due to the gravity of the offense and the harshness of the sentence." On the other hand, Sandoval repeatedly asserts that his life sentences are inherently illegal. The substance of his argument is that the "imposition of a mandatory minimum sentence for a teenage offender is inherently grossly disproportionate." This appears to be more of a categorical challenge to a particular sentencing practice; namely, the imposition of a mandatory sentence of life imprisonment without the possibility of parole on teenage offenders. We thus treat Sandoval's challenge as a categorical challenge to the sentencing practice of imposing mandatory life sentences without the possibility of parole on nonjuvenile teenage offenders convicted of murder in the first degree.

Sandoval's categorical challenge arises out of recent decisions of the United States Supreme Court and this court creating categorical rules regarding the sentencing of juvenile offenders. In *Roper v. Simmons*, the Supreme Court held the "Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." 543 U.S. 551, 578 (2005). In *Graham v. Florida,* the Court held the Federal Constitution "prohibits the imposition of a life without parole sentence

on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." 560 U.S. at 82. And in *Miller v. Alabama*, the Court held the Federal Constitution prohibited juveniles convicted of a homicide offense from being sentenced to a mandatory term of lifetime incarceration without the possibility of parole. 567 U.S. 460, 489 (2012). Under federal law, before a court can impose on a juvenile offender what would otherwise be a mandatory term of lifetime incarceration without the possibility of parole, the court must first conduct an individualized sentencing hearing considering five mitigating factors. Those factors are

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*State v. Lyle*, 854 N.W.2d 378, 404 n.10 (Iowa 2014) (quoting *Miller*, 567 U.S. at 477–78).

This court subsequently applied and extended the Supreme Court's categorical rules regarding the sentencing of juvenile offenders. *See State v. Roby*, 897 N.W.2d 127 (Iowa 2017); *State v. Sweet*, 879 N.W.2d 811 (Iowa 2016); *State v. Louisell*, 865 N.W.2d 590 (Iowa 2015); *State v. Seats*, 865 N.W.2d 545 (Iowa 2015); *Lyle*, 854 N.W.2d 378; *State v. Ragland*, 836 N.W.2d 107 (Iowa 2013); *State v. Pearson*, 836 N.W.2d 88 (Iowa 2013); *State v. Null*, 836 N.W.2d

41 (Iowa 2013). Of particular relevance here is *State v. Lyle,* in which this court held that "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution." 854 N.W.2d at 400. Also of relevance is *State v. Sweet,* which created "a categorical rule that juvenile offenders may not be sentenced to life without the possibility of parole under article I, section 17 of the Iowa Constitution." 879 N.W.2d at 839.

While Sandoval recognizes that the precedents in this area involved the creation of categorical rules relating only to the sentencing of offenders who were juveniles at the time of the offense conduct, he argues the rationale underlying the categorical rules is equally applicable to teenage adult offenders. We disagree and conclude Sandoval is not entitled to relief on the federal or state constitutional challenges to his sentence. In *Dorsey v. State,* filed today, we rejected the same request to extend our juvenile sentencing jurisprudence to adult offenders. __ N.W.2d __, __ (Iowa 2022). Our precedents in this area have "no application to sentencing laws affecting adult offenders." *Id.* at __ (quoting *Lyle,* 854 N.W.2d at 403). This "bright-line constitutional distinction between juvenile offenders and adult offenders for the purposes of article I, section 17 has been clear from the outset." *Id.* at ____. This bright line is "drawn in our law by necessity and . . . incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time." *Id.* at __ (quoting *Lyle,* 854 N.W.2d at 403). For the same reasons, Sandoval's claim under the Eighth Amendment also fails. *See, e.g., United States v. Marshall,* 736 F.3d 492, 500 (6th Cir. 2013)

("Considerations of efficiency and certainty require a bright line separating adults from juveniles. For purposes of the Eighth Amendment, an individual's eighteenth birthday marks that bright line."); *United States v. Rita*, 80 M.J. 559, 561 (A.F. Ct. Crim. App. 2020) ("Considering Appellant was not a juvenile facing confinement for life or an adult facing the death penalty, he falls outside the established categories of mandatory minimum punishments which have been found to violate the Eighth Amendment."), *review denied*, 80 M.J. 363 (C.A.A.F. 2020).

### III.

Sandoval was nineteen at the time he committed two murders in the first degree. His concurrent mandatory sentences of lifetime incarceration without the possibility of parole for committing these offenses are not categorically prohibited by either the Federal Constitution or state constitution.

**AFFIRMED.**

All justices concur except Appel, J., who concurs in part and dissents in part.

**APPEL, Justice (concurring in part and dissenting in part).**

In 2005, Sandoval was convicted of two counts of first-degree murder and two counts of attempted murder. He was sentenced to life in prison without possibility of parole for the murder convictions and twenty-five years imprisonment on the attempted murder charges.

In this case, Sandoval claimed before the postconviction-relief court that he was denied effective assistance of counsel at his 2005 trial and that because he received ineffective assistance in subsequent postconviction-relief proceedings, he can now bring an ineffective-assistance claim outside the three-year statute of limitations established in Iowa Code section 822.3 under the principles announced in *State v. Allison,* 914 N.W.2d 866 (Iowa 2018).

On appeal, Sandoval raises a new claim, challenging his sentence to life in prison without possibility of parole as amounting to cruel and unusual punishment under article I, section 17 of the Iowa Constitution.

### I. Proper Disposition of Sandoval's Postconviction-Relief Claim.

**A. *Allison*-type Claim.** The State raises a number of arguments to defeat Sandoval's *Allison* claim. First, the State argues that an *Allison* claim does not exist beyond a challenge to the ineffectiveness of counsel in his first action for postconviction relief. Second, the State argues that even if *Allison* might apply, Sandoval did not file his current postconviction-relief action until almost a year after *Allison* was decided. Such a filing, according to the State, cannot be considered to have been made "promptly" after *Allison* opened the possibility of

attacking serial ineffective-assistance claims. Third, the State argues that Sandoval does not have a claim under *Allison* because his filing occurred on July 8, 2019, several days after the legislative override of the decision that took effect on July 1, 2019. The State asserts that any effort to claim a June 27 filing date as a result of the prison mailbox rule fails because Sandoval has failed to present any evidence indicating the date the petition was placed in the hands of prison officials.

The State is correct, of course, that *Allison* itself involved a challenge to the ineffectiveness of trial counsel and first postconviction-relief counsel. It did not expressly deal with the problem of successive filings. Nonetheless, I would not categorically bar an *Allison*-type challenge for successive filings if the defendant asserts that trial counsel was ineffective and each successive counsel has been ineffective. In short, *Allison*-type principles apply where a defendant alleges that his trial counsel was ineffective and claims all subsequent postconviction-relief counsel have been ineffective in prosecuting that claim. If a first postconviction lawyer abandons their client and permits dismissal for lack of prosecution, and is followed by a second postconviction counsel who provides similar nonperformance resulting in dismissal, should not equitable tolling apply to a third postconviction action brought by competent counsel? Isn't the harm from successive ineffective assistance in postconviction relief the same in this circumstance as in *Allison?*

A question arises here whether Sandoval has promptly filed his most recent postconviction-relief action. As everyone recognizes, Sandoval could not

file such a claim under *Dible v. State,* 557 N.W.2d 881, 886 (Iowa 1996) (en banc), *abrogated on other grounds by Harrington v. State*, 659 N.W.2d 509 (Iowa 2003). Thus, the earliest he could have filed his claim would have been June 29, 2018, the date of the *Allison* decision. Sandoval filed his claim on June 27, 2019, about a year after the *Allison* decision was announced. Is that "prompt" under *Allison*?

The notion of promptness depends upon the circumstances presented. Here, Sandoval was not alerted to the need to file another postconviction-relief petition by an adverse ruling in a case of his that would raise a red flag, but only in a case involving a stranger. Because of this factor, and because of his limited ability to interact with the legal system due to his incarceration, a case can be made that Sandoval is entitled to some play in the joints on the issue of promptness.

But the dispositive question here is whether *Allison* applied to Sandoval in light of legislative action that all parties agree was designed to overrule *Allison*. *See* 2019 Iowa Acts ch. 140, § 34 (codified at Iowa Code § 822.3 (2020)). The statute took effect on July 1, 2019. Sandoval's petition in this case was filed on July 8, 2019. If July 8 is the date of filing, then the repeal of *Allison* by the legislature would apply to Sandoval's case, and he would not have an *Allison*-type claim.

The State sought dismissal of Sandoval's *Allison* claim on this ground. Sandoval's counsel did not file a resistance. At the hearing on the State's motion to dismiss, the attorney for Sandoval stated that Sandoval's postconviction-relief petition was filed on July 8. Sandoval's postconviction-relief counsel did not

mention the prison mailbox rule that was embraced by the United States Supreme Court in *Houston v. Lack,* 487 U.S. 266, 270 (1988), and adopted in numerous state jurisdictions. *See, e.g., State v. Rosario*, 987 P.2d 226, 228 (Ariz. App. 1999) ("A *pro se* prisoner is not in a position to make sure that his notice of appeal is timely filed. He cannot personally file the notice with the clerk of the court nor can he directly place the notice in the hands of the United States Postal Service."); *Sykes v. State,* 757 So. 2d 997, 1000–01 (Miss. 2000) (en banc) (adopting the *Houston* prison mailbox rule); *Woody v. State*, 833 P.2d 257, 260 (Okla. 1992) (applying the *Houston* prison mailbox rule, noting that "a rule other than the mailbox rule for incarcerated *pro se* prisoners would interject a degree of arbitrariness which could sabotage equal protection and equal access to the courts"). *But see Carr v. State,* 554 A.2d 778, 779–80 (Del. 1989) (per curiam) (rejecting the *Houston* prison mailbox rule). The district court entered its order dismissing the petition in part because of the overruling of *Allison* by the legislature.

Then, in a 1.904 motion, Sandoval's counsel for the first time raised the prison mailbox rule. *See* Iowa R. Civ. P. § 1.904(2). Counsel asserted in its brief that Sandoval "mailed the documents to the court on June 27, 2019 by placing them in the prison mailbox timely and in good faith, and paid extra for a signature guarantee card to preserve his mailing date." No affidavit or evidentiary support was attached.

Ordinarily, we have held that a 1.904 motion is not designed to raise new issues but only to alert the district court to rule upon an issue previously

presented to the court. *Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 543 (Iowa 2019) (*reiterating* a motion under the precursor to rule 1.904(2) is not a vehicle for a wholly new argument and cannot be a replacement of the requirement to preserve error). The record shows that Sandoval's lawyer did not raise the issue in any pleading or at the hearing on the motion to dismiss. In *Homan v. Branstad*, we stated that a 1.904 motion that asks the district court to amend or enlarge its ruling "based solely on new evidence is generally improper." 887 N.W.2d 153, 161 (Iowa 2016); *see also McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015) ("Generally speaking, a party cannot use a rule 1.904(2) motion to introduce new evidence."). So even if an affidavit or some other evidence had been presented, it would not have been proper under our caselaw. Under the circumstances, Sandoval's prison mailbox claim was not preserved. And because of that, *Allison* is not applicable.

**B. Due Process and Equal Protection Arguments.** Sandoval also raises due process and equal protection claims on appeal. The State argues that these claims are not preserved. The State is correct that Sandoval's lawyer did not preserve the due process and equal protection claims in the district court. As noted, postconviction-relief counsel did not file a written resistance to the motion to dismiss. And, at the hearing, Sandoval's counsel simply stated, "I don't believe that the amendments to the post-conviction relief statute are constitutional under the Iowa constitution." We have generally held that a mere assertion of "unconstitutionality" does not preserve a claim. *State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002). And we have recently stated that "A party cannot

preserve error for appeal by making only general reference to a constitutional provision in the district court and then seeking to develop the argument on appeal." *Taft v. Iowa District Court*, 828 N.W.2d 309, 322–23 (Iowa 2013). Further, Sandoval made no effort to seek an expanded ruling under rule 1.904. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (holding that in order to preserve error on appeal where the trial court fails to rule, a motion requesting a ruling is required to preserve error).

In a reply brief, Sandoval asserts that the ordinary issue preservation rules do not apply to claims of ineffective assistance of counsel. But in Sandoval's main brief, no claim was made that current trial counsel was ineffective for failure to develop the constitutional claims or failing to obtain a rule 1.904 ruling. Here, Sandoval for the first time is raising ineffective assistance in his reply brief. But we have held that new issues cannot be raised on appeal for the first time in a reply brief. *Hills Bank & Tr. Co. v. Converse*, 772 N.W.2d 764, 770–71 (Iowa 2009). Exceptions to this rule are not present here. *Villa Magana v State*, 908 N.W.2d 255, 259–260 (Iowa 2018) (per curiam) (exceptions include challenge to illegal sentence and structural error where an argument was presented for the first time in a reply brief but the State had addressed the argument in its brief).

## II. Cruel and Unusual Punishment.

The second issue in this case, as I see it, is whether Sandoval is entitled to a hearing in district court on the question of whether his sentence to life without possibility of parole for crimes committed when he was nineteen amounts to cruel and unusual punishment. For the reasons expressed in *Dorsey*

*v. State*, \_\_\_N.W.2d \_\_\_, \_\_\_ (Iowa 2022) (Appel, J., dissenting), I would remand this matter to the district court for a hearing on the issue.